## Frank T. Rohm et al. *v.* G. Albert Hill, Highway Commissioner

Superior Court      Fairfield County      File No. 87048

Memorandum filed March 5, 1953.

*Brennan, Daly & Seymour, John Arcudi, Thomas J. Barrett, Margaret C. Driscoll, Joseph P. McNamara,* all of Bridgeport, and *Nicholas LaMorte,* of Norwalk, for the Plaintiffs.

*George C. Conway,* Attorney General, and *Jack Rubin,* Assistant Attorney General, of Hartford, for the Defendant.

COMLEY, J. This is an action for a declaratory judgment as to the powers of the defendant as highway commissioner to plan, lay out and construct a highway which is generally referred to as the Fairfield County "expressway" and for various forms of injunctive relief. There may well be a question as to the standing of certain of the plaintiffs to maintain this action. As to the status of others, especially those whose properties are directly within the limits of the right of way adopted by the defendant, there can be no question. Since the result would not be affected by a decision as to which of the plaintiffs are proper parties and which are not, no such determination is necessary and will not be made.

The plaintiffs' request for a declaratory judgment is justified by the facts, for there certainly exists a sufficient practical and urgent need for a judicial determination of the defendant's powers. See *Connecticut Savings Bank* v. *First National Bank,* 133 Conn. 403, 409.

A large mass of evidence in the form of testimony and exhibits was laid before the court. Much of it has to do with the nature of the proposed layout and especially with the large number of properties involved, the numerous families who will be displaced by it and the great expense which the project entails. In the interest of a prompt decision of the ultimate

question no review of that evidence will be here attempted. Moreover, the salient facts are now a matter of common knowledge. They have been widely disseminated for the past year or two in public meetings, in newspaper articles and in radio broadcasts.

The sole question before the court is whether or not the defendant has the power under the statutory law of this state to do what he has already done and what he plans to do in the future. It cannot be too strongly emphasized that this is the only question of which this court may take cognizance. Whether or not the proposed highway is necessary, whether or not it is wise, whether or not it imposes hardship and whether or not it represents an extravagant use of public funds are not judicial questions. They are legislative and executive questions with which the courts may not interfere.

The defendant's power to construct the expressway must be derived from one or more of four legislative enactments. These are: first, Special Act No. 235 of 1951 (26 Spec. Laws 172), which is entitled "An Act Authorizing the Highway Commissioner to Plan, Lay Out and Construct a Highway in Fairfield County"; second, General Statutes, § 2257 entitled "Parkways and freeways"; third, General Statutes, § 2194, entitled "Altering of highways; entry upon private property"; and, fourth, General Statutes, § 2231, entitled "Relocation." These statutes will be considered separately.

First, as to Special Act No. 235 of 1951. This act reads as follows: "The highway commissioner is authorized to plan, lay out and construct a highway in Fairfield county between the New York state line and the Housatonic River to relieve traffic congestion on route No. 1."

On its face the statute appears to confer upon the defendant the broadest powers and, at first blush,

it would seem to authorize the expressway. Upon analysis, however, this result cannot be sustained for the reason that it does not confer upon the commissioner the two most necessary, auxiliary powers to enable him to build the road, viz., the power to purchase or condemn property for the acquisition of the right of way and the power to enter into contracts for the expenditure of funds in the actual construction of the road. The great weakness of the statute lies in the fact that it does not designate the proposed road as a trunk-line highway. In this state the highway commissioner has jurisdiction over only two classes of highways—trunk-line highways or state-aid highways. With the latter class we are not concerned in this case.

The trunk-line system of highways was established by chapter 174 of the Public Acts of 1913, which provided as follows: "A system of trunk line highways, as shown on the accompanying map marked 'Connecticut Showing System of Fourteen Trunk Line and Connecting Auxiliaries Charles J. Bennett June 2, 1913, State Highway Commissioner,' is hereby established."

Since that date there has been a tremendous expansion of the trunk-line system but no highway has ever been added to the system without express legislative designation. The original map of the trunk-line system is still recognized in General Statutes, § 2255, which provides: "The highway commissioner shall prepare a map showing the trunk line highway system as established by law, and shall publicly display such map in his office." In other words no highway in this state can be considered a part of the trunk-line system except "as established by law."

When the General Assembly expressly designates a new highway as a trunk-line highway, the commissioner then has full power to purchase land needed for the purpose under General Statutes § 2226, or to

condemn land under § 2264 and to call for bids for the actual construction under § 2229. He has similar powers with respect to state-aid highways. See § 2224 and the other sections therein referred to. But, unless a highway is expressly designated a trunk-line highway or is a state-aid highway, the commissioner is without authority to acquire property for it or to contract for its construction.

The special act of 1951 does not place the proposed highway in the trunk-line system. It is impossible for the courts to supply this omission in the statute or to read into it an intention not expressed by the legislature. It is true that in *Stock* v. *Cox,* 125 Conn. 405, the so-called Merritt Parkway Act of 1935 was construed to refer to a trunk-line highway although there was no special designation in that act that it was to be a part of the trunk-line system. However, that construction was only justified on the ground that earlier statutes, enacted in 1927, 1931 and 1933, did expressly describe the Merritt Parkway as a trunk-line highway and these earlier statutes were in full force and effect and were not repealed, either expressly or by implication, by the act of 1935.

In the present case the legislative history of the 1951 act is precisely the reverse of the act of 1935 which was under consideration in *Stock* v. *Cox,* supra. In 1943, by Special Act No. 365 (24 Spec. Laws 254) a highway from the New York state line to the Housatonic River "in the vicinity of U.S. route number one" was authorized and, by the language of the act, was "included in the trunk line system of highways." Again, in 1945, by Special Act No. 361 (24 Spec. Laws 753) the highway authorized in 1943 was recognized but certain limitations upon the expenditure of funds therefor were prescribed. If these two statutes were still in existence, there could be read into the 1951 act the implied provision that the highway was to be a part of the trunk-line system by

analogy to the reasoning in *Stock* v. *Cox,* supra. But that is impossible, for in 1947 by Special Act No. 131 (25 Spec. Laws 170) the General Assembly expressly repealed the acts of 1943 and 1945. It, therefore, cannot now be argued that the earlier statutes are to be read in conjunction with the 1951 act and that the latter, by necessary implication, creates a trunk-line highway.

Since the proposed expressway has not been designated a trunk-line highway and since the 1951 act confers no special powers of purchase, condemnation or contract upon the commissioner, it must be concluded that he has no power to proceed under that act without further legislation.

Second, as to General Statutes, § 2257, entitled "Parkways and freeways." This lengthy statute enables the highway commissioner "upon direction by the general assembly" to "lay out and construct any trunk line highway as a parkway or freeway." It is first to be noted that no highway in this state can become a parkway or freeway unless it is first designated a trunk-line highway and, as pointed out above, the proposed expressway has never been so designated. In the second place, § 2257 requires the commissioner, prior to construction, to submit to the general assembly information as to a "definite route" and the "approximate cost." These steps the commissioner has never taken. In the third place, § 2257 expressly defines a parkway as "devoted exclusively to, the use and accommodation of noncommercial motor vehicle traffic" and a freeway as "any trunk line highway which shall be designed to separate through, highspeed, noncommercial motor vehicle traffic from all other types of traffic by the use of independent traffic lanes." The proposed expressway cannot be considered a "parkway" because it is not to be exclusively devoted to noncommercial traffic and it cannot be

considered a "freeway" because it will not provide for the separation of noncommercial traffic from all other types of traffic. It, therefore, must be concluded that the defendant is without power to proceed under § 2257.

Third, as to § 2194, entitled, "Altering of highways; entry upon private property." This statute provides as follows: "The highway commissioner shall have power to lay out, alter, construct or reconstruct, maintain or repair, widen or grade any highway whenever, in his judgment, the interest of the state shall so require. Said commissioner or his agent may enter upon private property for the purpose of surveying or examining such property for the location or relocation of any highway, or for the determination of the boundary line of any highway under his control. He shall use care so that no unnecessary damage shall result, and the state shall be liable to the owner of any property for any damage he may cause such owner."

If certain words in this statute are picked out and placed together without regard to context the commissioner would have the "power to lay out . . . [and] construct . . . any highway whenever, in his judgment, the interest of the state shall so require." These are broad powers, indeed. When these words are read in connection with the remainder of the statute and, especially when they are read in connection with all the other statutes pertaining to the commissioner, they are not as broad as they seem. In the first place the title of the statute—"Altering of highways; entry upon private property"—is indicative of its limited purpose. In the second place, as has been pointed out earlier in this memorandum, all the statutes relating to the highway commissioner unquestionably limit his authority to two classes of roads, viz., those roads which are expressly designated as trunk-line roads and those roads which are built by

joint action of the state and of the several towns as state-aid roads. In view of this clear limitation of the power of the commissioner to deal with only two well-defined classes of highways, as evidenced by numerous statutes, it would be absurd to declare that this one statute (§ 2194) authorizes him to build any kind of a road at any time or place or at whatever cost whenever in his judgment the interest of the state shall so require. If such a construction were permissible it would render superfluous all the other statutes which carefully define and limit his powers and it would make unnecessary all the legislation which originated and has, through the years, expanded and safeguarded our trunk-line system. Moreover, as pointed out above in connection with the 1951 act, the mere naked power to build a road is meaningless unless there is appended to it the power to purchase or condemn property and the power to enter into contracts for construction. Section 2194 confers no such power. It, therefore, must be concluded that the defendant is without power to proceed under § 2194.

Fourth, as to General Statutes, § 2231, entitled, "Relocation." This statute reads as follows: "The highway commissioner may relocate any section of any state aid or trunk line highway for the purpose of straightening or removing any dangerous location, and may abandon any part of any state aid or trunk line highway no longer needed upon notice to the board of selectmen of the town wherein any such section of highway is located, and such section of highway shall revert to the town unless legally abandoned by it. Before abandonment of any part of any state aid or trunk line highway, the highway commissioner shall put the same in reasonably good condition."

This is the statute upon which the commissioner relies for his authority to build the expressway. It

is his present claim, in substance, that he is relocating sections of route 1 for the purpose of straightening or removing dangerous locations, and that, if the relocation of these sections results in one continuous highway across the entire width of Fairfield County, it is nonetheless within his powers under § 2231. The plaintiffs have produced evidence to indicate that in the past, the defendant by letter and by public speech, has not adhered consistently to complete reliance upon this so-called "relocation statute." It should be pointed out that the utterances of the commissioner as to his own interpretation of his powers are of little, if any, importance. The controlling question is whether he actually has the statutory power to build this highway. If he has that power, he may proceed with it.

The construction of the statute presents a most serious question as applied to the facts of this case. It involves, in the last analysis the meaning of the words "relocate" and "any section of any . . . trunk line highway" and "for the purpose of straightening or removing any dangerous location." To ascertain whether the proposed expressway is within the fair meaning of this language requires a brief reference to the present condition of route 1 and to the remedy which the defendant proposes to meet that condition. As indicated above all these facts have been fully developed over and over in various forms of public comment and discussion. They are not really in dispute except in minor detail and no repetition of them is here necessary except by brief reference to explain the basis of the court's decision.

United States route 1 is the main artery of east-west travel for both commercial and noncommercial vehicles across Fairfield County and thence across the state to the Rhode Island line. The length of the road across Fairfield County is approximately 35 miles and across the state approximately 113 miles. It

is by common knowledge an ancient road, many parts of it being the King's Highway of colonial times. Much of it has for many generations been known as the Post Road. It was, and always has been, a part of the trunk-line system as adopted by the General Assembly. In Fairfield County the road traverses the eight shore-front towns of Greenwich, Stamford, Darien, Norwalk, Westport, Fairfield, Bridgeport and Stratford. It passes through the most thickly-settled urban and suburban areas in the county. It handles a tremendous volume of commercial and noncommercial traffic. For a time the noncommercial traffic was lessened by the construction of the Merritt Parkway but the beneficial effects of the construction of that highway have now largely disappeared. The commercial traffic is constantly increasing. The accident rate is alarming, being 520 per 100 million vehicle miles, and of these accidents 6.6 involve fatalities. On the state-maintained portions of the road there have been 6525 vehicular accidents in the past six years with 83 fatalities, and on the town-maintained portions 1907 accidents in the past three years with 6 fatalities. The road is outmoded, out-dated and far below the present recognized standards for the construction of highways bearing a similar traffic load. This is true chiefly for two reasons— first, because it is a free access, undivided highway with innumerable intersections at grade and with free ingress and egress to and from abutting homes and places of business; and, second, because throughout its length it has sharp curves and grades of varying percentages. The condition has reached a point where public safety and public welfare imperatively demand an immediate remedy.

The plaintiffs do not dispute this. As the court understands their position, they admit that the present highway is inadequate and unsuitable and that a new and different artery of travel is urgently

needed. They oppose the proposed expressway for two reasons: first, because they believe that it should be placed in a more northerly location where there would be less disturbance and dislocation in more thinly settled areas and less expense involved in the acquisition of properties; and, second, because the defendant has no power, under the so-called "relocation" theory to engage in the construction of a new road 35 miles in length and involving an expenditure now estimated at 120 million dollars.

The defendant proposes to remedy the conditions on route 1 by the construction of an "expressway." This is an engineering, not a legal term. It connotes a highway with divided lanes for vehicles traveling in opposite directions. It will be a highway with limited access, with no crossings at grade and with the only means of ingress and egress being by so-called "interchanges," of which there will be an average of one per mile. The maximum curvature permitted will be about 3 per cent and the maximum grade from 3 per cent to 5 per cent.

Various phases of this plan have been under consideration in the highway department since 1943 when Special Act No. 365 was enacted. A map was then prepared showing a highway running across the county. In many respects the highway then planned resembled the proposed expressway. In the intervening years studies were made in several of the areas involved. Some of these studies were made and tentative plans considered prior to 1951.

The proposed expressway in a general way parallels present U.S. route 1. It is undoubtedly intended to invite much of the traffic now using route 1 and, in that sense, is a "relocation" of the latter road. It will either touch or cross route 1 in 10 places and in 10 or 12 other places the present route 1 will form a part of the so-called "interchanges." Thus, in its

physical location as well as in the purpose which it is designed to serve, it may well be described as a "relocation" of the present road.

The crucial question under § 2231 is whether the new highway may fairly be said to constitute the relocation of "any section of any state aid or trunk line highway for the purpose of straightening or removing any dangerous location." It is the plaintiffs' contention that a continuous, newly constructed highway over 35 miles in length cannot be regarded as the relocation of a "section." This argument overlooks one important fact. The defendant is not engaged in the relocation of any one section. He is relocating many sections which constitute dangerous locations. These sections form an almost continuous sequence across Fairfield County. There is an almost unbroken succession of sections of the old road which because of curves, grades, free and unlimited means of access, and traffic congestion in thickly populated areas, are dangerous locations. To relocate one or several of these sections and leave the others untouched would obviously not remedy the situation. If that were done the result would be utter confusion. If traffic were moved in one section across a modern, high-speed expressway and then channeled back into the confines of the old road in another section and so on, back and forth, across the county, it requires no argument to demonstrate that the result would be worse than the present condition. The defendant's position, as the court understands it, may be summarized in this manner: There are throughout the whole length of route 1 across Fairfield County many sections of the road which are dangerous locations from the standpoint of modern traffic needs; to relocate one or a few of these sections without relocating the others would afford no effective remedy for the present dangers; the only practical way in which to make the several relocated sections usable is to

tie them together in one continuous line; the mere
fact that, when so tied together, they do form one
continuous line across the county does not negative
the fundamental idea that they are a consecutive
series of relocations of sections of a trunk-line high-
way designed for the purpose of removing dangerous
locations; he has the power to do this under § 2231.

In view of all the evidence before the court, this
position appears to be reasonable and it is, therefore,
concluded that the commissioner has the power to
build the proposed expressway. See *Goodhall* v.
*Cox*, 129 Conn. 79.

Certain of the plaintiffs challenge the defendant's
right to relocate any sections of U.S. route 1 without
first obtaining approval from the United States
bureau of public roads. The court can find no require-
ment in the federal law that such approval be ob-
tained. It is apparently true that if the defendant
plans to seek federal funds to aid in the construction
of the road, such approval must be obtained before
the aid can be granted. But he is not bound by law to
seek such aid and apparently has not done so up to
the present time. Under these circumstances, there is
no illegality of which these plaintiffs are entitled to
complain.

The same is true of the claim advanced by these
plaintiffs that it is illegal for him to proceed until
he has obtained approval from the United States
corps of engineers of the plans for the eight bridges
which will span navigable waters along the route.
Such approval must, undoubtedly, be obtained, and
it is true that the defendant will sooner or later be
required to adapt his plans for those bridges to what-
ever requirements are imposed by the United States
corps of engineers. But the fact that he has not yet
done so does not render the whole project illegal.

As above indicated, this decision is being rendered promptly and, for that reason, without an elaborate or detailed discussion of the facts which have already been widely disseminated through various sources of public information. The issues before a court in a case of this nature are necessarily narrow. To what extent the legislative branch of the government should take cognizance of the broader issues which are not within the judicial field is not for the courts to say. The General Assembly is presently in session and this decision is now made in ample time for that body to take whatever action it may deem appropriate, either in sustaining the defendant in what he has done and proposes to do or in recognizing the claims of these plaintiffs and others similarly situated.

A declaratory judgment is rendered to the effect that the defendant as highway commissioner of the state of Connecticut has the power and authority under § 2231 of the General Statutes to proceed with the relocation of sections of the trunk-line highway known as U.S. route 1, as set forth in plaintiffs' exhibits A-H, inclusive, and in plaintiffs' exhibit K. The plaintiffs' prayers for injunctive relief and for other relief are denied.