MITCHELL B. STOCK *v.* WILLIAM J. COX.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

406

Argued April 4—decided May 5, 1939.

*Lawrence S. Finkelstone,* with whom, on the brief, was *George N. Finkelstone,* for the appellant (plaintiff)

*Richard F. Corkey,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

BROWN, J. By this action against the defendant individually and as state highway commissioner, the plaintiff seeks damages and injunctive relief because of the taking for the purposes of the Merritt Parkway of a strip of land three hundred feet in width, bisecting his property in Fairfield. The finding, with such corrections as the plaintiff is entitled to, contains these material facts, in addition to the recital of the pertinent legislation subsequently summarized in this opinion, including the Merritt Parkway Act, General Statutes, Cum. Sup. 1935, § 537c. Prior to the passage of these acts there existed in this state a system of trunk line highways without restriction as to use. On May 25, 1931, and ever since, a trunk line highway has existed from Glenville in Greenwich to the Housatonic River in Stratford. The Hutchinson River Parkway in New York, used exclusively by noncommercial vehicles and without cross traffic or entrance from any private property, adjoins and complements the Merritt Parkway at the state line. The plaintiff has long been and still is the owner of a desirably located thirty-two acre tract of land in Fairfield with a stream, swimming pool, and numerous structures thereon, bounded northerly by Congress Street. On June 23, 1938, the defendant as commissioner, filed with the clerk of the Superior Court in Fairfield County an assessment of damages and benefits for the taking of a strip of this land specifically described therein, three hundred feet wide and one thousand four hundred and fifty-five feet long on its northerly side, containing 9.21 acres, reciting that in pursuance of Special Laws 314 of 1931 and 379 of 1933, and of

General Statutes, § 1528, and Cumulative Supplement 1935, § 537c, "the premises . . . are found to be necessary for the lay-out, alteration, extension, widening, change of grade and improvement of the trunk line highway commonly known as the Merritt Parkway, and the same are hereby taken. . . . Damages are assessed at $8,780.67. Benefits are assessed at 0.00." Due notice of the filing of this assessment was given to the plaintiff by the clerk.

The land taken creates a division of the plaintiff's entire property, leaving a tract of 7.25 acres between Congress Street and the northerly line of the land taken, and one of about twenty acres abutting the southerly line of the taken land with no existing access to any highway. The former tract is nine hundred and fifty feet long, and one hundred and fifty feet in width at its widest point, narrowing to zero. The stream, pool, and structures above mentioned are on the land taken, which lies between the two segments just described. The plaintiff has used his property for residential and commercial purposes requiring the use of commercial vehicles to carry heavy and bulky materials. The surface of the road to be constructed on the land taken, will be at a grade varying from two to ten feet above the present grade of the plaintiff's property. Although the defendant as commissioner, by his agents, has entered on the land taken, the plaintiff has been crossing it since June 23, 1938, and still is doing so, to and from his land both north and south thereof, despite the construction thereon, and has not been restrained or prevented by the defendant. In addition to this land taken, the defendant as commissioner has also expropriated for the purpose of a highway, another contiguous strip fifty feet wide along the entire south line thereof. Upon the completion of the parkway the plaintiff will be deprived of access

from the first segment of his land to the second segment across the central segment taken, whereas prior to this condemnation it was possible for the plaintiff to pass freely and without interference or interruption from one portion thereof to another. This condemnation will prevent the plaintiff's right of access to an existing public highway in so far as the plaintiff's property south of the taking line is concerned.

The defendant in signing the assessment of benefits and damages filed, had no knowledge regarding the basic facts involved in the taking and award, nor of how the $8780.67 was computed, and he did not compute it. In making this assessment he executed it as commissioner upon the advice of engineers of the bureau of rights of way and boundary surveys of the highway department. The plaintiff introduced no evidence as to the use made, if any, of the appraisals which were marked for identification at the trial, or of the manner in which they may have been used by the defendant or the witness Taylor, who was the chief of this bureau, in making the assessment of damages and benefits in this case. No award of damages to the plaintiff for this taking other than by this assessment has been made by the defendant. The defendant as commissioner, by his agents, has made excavations on the land taken, piled this material to a height of from five to twelve feet along the southerly taking line for two hundred feet, destroyed a bridge over the brook and diverted the water course. He further is threatening to remove or destroy the structures thereon, to change the contour of the land by use of steam shovels and other equipment, and thereby to disturb the plaintiff's peaceful possession. An appeal by the plaintiff from the assessment of damages and benefits is now pending in the Superior Court in Fairfield County.

Upon the facts which it found, and construing the statutes mentioned, the court concluded that: the Merritt Parkway is a trunk line highway; the statutes under which the defendant as commissioner purported to act, gave him the power to expropriate the plaintiff's land, and the assessment of benefits and damages was made in accordance therewith; the plaintiff is not entitled to an injunction, as he has an adequate remedy at law for any acts complained of done by the defendant as commissioner; and the defendant committed no answerable act in his individual capacity.

The principal question presented is whether the statutes provide a proper method for the appropriation of the plaintiff's land by the highway commissioner for the purposes of the Merritt Parkway. The defendant claims that this is a trunk line highway, and that therefore § 1528 under which he proceeded, and the statutes supplementary thereto, are applicable and expressly authorize and provide for the appropriation which was made. The plaintiff claims in effect that while this might have been true prior to the enactment of § 537c in 1935, "by the passage of this act, the state vitiated or repealed by implication all other legislation with relation to said road," so that in 1938, when this taking occurred, it was no longer a trunk line road, § 1528 was inapplicable, and since the 1935 act contains no provision for taking, the defendant's action was entirely devoid of authority. To answer the question so raised we must consider the relevant statutes to ascertain the Legislature's intent as therein expressed.

The first such statute is Chapter 282 of the Public Acts of 1927, providing that the highway extending southwesterly from near Washington Bridge in Stratford to Glenville in Greenwich at the state line "is included in the trunk line system of highways."

Thereafter these further enactments followed in order, effective as of the dates respectively stated. Special Act 314 of May 1, 1931, provides that the highway commissioner "is directed to lay out" the highway, identically described as in the 1927 act, and that "when . . . so laid out, it shall be included in the trunk line system of highways." Special Act 408 of May 19, 1931, entitled "An Act Creating the Merritt Highway Commission," after providing for the appointment of the commission, continues: "Sec. 3. When said Merritt highway shall be constructed" the commission shall make rules regulating traffic thereon, exclusively control its beautification, supervise the expenditure of all appropriations by Fairfield County "for the purposes of such highway," and "co-operate with the state highway department . . . in the development of such highway and the land in the vicinity thereof." By Special Act 498 of May 25, 1931, $1,000,-000 is appropriated to the highway department for "the purchase of real estate for, and in the construction of, the Merritt Highway." By Special Act 379 of June 7, 1933, the highway commissioner is "authorized and directed to lay out the trunk line highway referred to in chapter 282 of the public acts of 1927, hereby designated as 'The Merritt Highway,' either by using existing highways or by acquiring, by purchase or condemnation, new rights-of-way," and it further provides for the making and filing of maps of the layout by the highway commissioner for public inspection, and the advertising thereof. It then concludes with the provision that when these requirements have been met, the road "shall be deemed to have been legally laid out as a trunk line highway and all provisions of the statutes relating to trunk line highways shall apply to such layout or highway."

These enactments clearly evince that the Legisla-

ture's initial intent in 1927 was to constitute the existing road from Stratford southwesterly to the state line a trunk line highway; that this was reaffirmed and amplified in 1931 by an express direction to the highway commissioner to lay this out as a part of the trunk line system as implemented by an appropriation for the purchase of real estate incident thereto, by reference to it as the Merritt Highway, and by the creating of the Merritt Highway commission to facilitate its development and that of the adjoining land but not supplanting the highway commissioner in the exercise of the statutory authority accorded him; and that this broader intent to have the highway commissioner construct the Merritt Highway as a trunk line road utilizing existing highways was reiterated in 1933 with the additional authorization to utilize rights of way to be acquired, with the further intent expressly stated that all statutory provisions applicable to trunk line highways, which included §§ 1473, 1475, 1513 and 1528 among others, should apply to this layout or highway. Under the statutes the highway commissioner then had undoubted authority to take the land necessary for the construction of the Merritt Highway as a trunk line highway, proceeding under § 1528. Was he stripped of the power to take the plaintiff's land for this highway by the passage of § 537c in 1935?

This statute, effective June 13, 1935, entitled "Merritt Parkway," provides for the issue by Fairfield County of $15,000,000 of bonds to be paid by the state, "for the purpose of providing funds necessary for the immediate construction and completion of said parkway. . . ." It further specifies that the net proceeds from their sale shall be paid to the state treasurer and kept in a special "Merritt Parkway Fund," upon which the highway commissioner is authorized to draw "for all costs in the completion of said parkway . . . in

the same manner and to the same extent that he draws upon regular highway funds." It also provides that when the necessary funds have been so deposited with the treasurer, "the highway commissioner is authorized and directed to proceed with the immediate construction and to immediately complete the Merritt Parkway as a through road for non-commercial vehicles from the New York state line on the west across the county of Fairfield to the Housatonic River on the east. Said commissioner shall design and construct said road as a parkway." These provisions patently relate to the same highway as the preceding acts but manifest a further development of the Legislature's intent, which was first given expression concerning it in 1927, with regard to the nature of the highway to be established between these stated termini. In addition to providing financing and that the commissioner immediately proceed with its construction, this statute gives clear expression to the conception that the road be of the parkway type, a first intimation of which intent is found in the 1931 act authorizing the Merritt Highway commission to co-operate in the development of "the land in the vicinity of" the highway as well as the road itself. The restriction of the road's use to noncommercial traffic, and the injunction that the highway commissioner build it as a through parkway, express a logical culmination of the evolving legislative intent concerning this trunk line road as it is evidenced by these statutes successively enacted.

In urging that the passage of § 537c repealed by implication all other legislation relating to the road for which his land has been taken, the plaintiff contends that this statute discloses an intent absolutely contrary to that suggested in the conclusion reached in the preceding paragraph. His argument, in brief,

is that the use in this act of the word "parkway" instead of "highway," the provision for financing by a county bond issue instead of directly from state funds, the restriction of its use solely to noncommercial vehicles, and the reposing of certain functions of control and regulation in a special commission, constitute this a way so different in type from any ever before constructed in the state, that the previously enacted statutes making it a trunk line road and thus providing the condemnation procedure incident thereto, cannot properly be construed as applicable to it, and so as to it are in effect repealed. That this statute uses the word "parkway" as descriptive merely rather than as designating a type or classification of thoroughfare not comprehended within the terms of the existing highway statutes, is evidenced by its provision for the construction of "said road as a parkway." Preceded as this enactment was by those of 1933, directing the commissioner to lay out a trunk line highway designated as the Merritt Highway between the points therein specified falling within the termini stated in the present act, specifying the method of accomplishing this layout, appropriating $1,000,000 toward acquiring a right of way for and the construction of it, and creating the Merritt Highway commission to cooperate in its development, the direction to the commissioner in the 1935 act "to proceed with the immediate construction and to immediately complete the Merritt Parkway," can only be reasonably construed to refer to an already existing road, and further to mean that this road is the one theretofore known as the Merritt Highway.

Furthermore, there is no inherent repugnancy in meaning between the terms "parkway" and "trunk line highway." A parkway is "a broad thoroughfare beautified with trees and turf." Webster's New In-

ternational Dictionary (2d Ed.). A review of the pertinent legislation reveals that while the term "trunk line highway" as used in the statutes connotes a main line road, it has no other particular significance except as designating a road either originally included within the trunk line system on the map prepared by the highway commissioner pursuant to Chapter 174 of the Public Acts of 1913, or expressly added to it since by statute, which is under the essential control of the commissioner, and the cost of which is borne by the state. Where these requisites appear, since no specifications as to the type of layout or method of construction of such a road are prescribed in the statutes, it continues to be a trunk line highway, whatever restriction the Legislature sees fit to impose as to the kind of vehicles which shall use it, and this is true of this road under the Merritt Parkway act. Use of the word "parkway" instead of "highway" had no such significance as the plaintiff claims. Nor have the other grounds upon which he relies. Neither the expedient of temporarily utilizing county credit to raise the needed money later to be paid from the general highway funds of the state, the restriction of use to noncommercial vehicles only to accord with that in force on the connecting Hutchinson River Parkway, which the Legislature apparently deemed the most expedient manner of dealing with the exceptional traffic load of this particular area, nor the limited control in co-operation with the highway commissioner reposed in the Merritt Parkway commission, are either singly or taken together sufficient to sustain the plaintiff's claim.

The wording of § 537c strongly indicates that it was intended primarily to provide for a method of financing in order to enable the highway commissioner to immediately construct and complete this highway

which he had already been authorized and directed to lay out. It was manifestly to supplement and not to supplant the previous statutes. What we have said in an earlier case is equally true here: "There is no repugnancy between the statutes; and we think there is no repeal by implication. Such repeals are not favored, and when an earlier and later statute can be reconciled, it is the duty of the court to so construe them that the latter may not operate as a repeal of the former." *Costa* v. *Reed,* 113 Conn. 377, 385, 155 Atl. 417, and cases cited. This conclusion, which in effect is equivalent to ruling that § 1528 provided for the taking here, is determinative of the principal claims of the plaintiff, including one that this taking violated his constitutional rights.

A contention urged in support of this claim is that the statute's provision for the $15,000,000 fund, limits payments by the commissioner thereto, which leaves the possibility of an award to the plaintiff without funds to pay it, by reason of other payments previously made. Section 1529 expressly provides, however, for payment by the state treasurer to any landowner for his property taken, of the damages assessed by the commissioner under § 1528 or reassessed by the court under § 1531. This fully meets the requirement that means must be provided to enable him to secure just compensation therefor. *State* v. *McCook,* 109 Conn. 621, 630, 147 Atl. 126.

Another contention is that the commissioner failed properly to perform the duties of his office and to consider all of the items of damage in executing the award of damages and benefits. This is predicated on the fact that in so doing he acted upon the advice of the highway department engineers engaged in that work, rather than upon his own knowledge of the specific facts involved. In view of the authority given

the commissioner by § 1466 to "appoint . . . such . . . engineers . . . as he may deem necessary to carry out the duties incumbent upon his office," and of the fact that such an assessment "constitutes but a formal offer to the landowner, which he may or may not accept, as a step toward payment by the State if he does accept and to the institution of proceedings in court if he does not," inadequacy in the amount of which affords no ground for interference by the court (*Munson* v. *MacDonald*, 113 Conn. 651, 657, 155 Atl. 910), we cannot say that this action on the commissioner's part did not constitute a sufficient compliance with the statute. What we have said further shows that the court did not err in allowing the defendant to testify that he relied upon his assistants in making this award. The court properly excluded the evidence offered by the plaintiff as to the value of his property. This was immaterial upon the issues before it. The evidence of the commissioner's subsequent taking of the fifty-foot strip for the purpose of a highway, offered by the defendant, was properly admitted as bearing on the possible equities of the situation in view of the plaintiff's claim that he would be deprived of all access to the southerly segment of his remaining land.

For the reasons stated, the court's conclusion that the defendant as commissioner had the power under the statutes to take the plaintiff's land and made the assessment for the middle segment taken in accord therewith, was correct. The plaintiff was therefore entitled to no judgment in damages. Whether he was entitled to injunctive relief depends upon the effect on the plaintiff's remaining tract to the south, of the taking by the proceeding which the defendant brought. The rule of damages for a taking in the usual case of this nature is "the difference between the market value of the whole tract as it lay before the taking, and

the market value of what remained of it thereafter and after the completion of the public improvement. *Gaylord* v. *Bridgeport,* 90 Conn. 235, 239, 96 Atl. 936; *Cook* v. *Ansonia,* 66 Conn. 413, 431, 34 Atl. 183." *Martin* v. *West Hartford,* 93 Conn. 86, 88, 105 Atl. 342; *Young* v. *West Hartford,* 111 Conn. 27, 33, 145 Atl. 205. The use to be made of the land taken is necessarily a factor to be considered in the application of this rule. The finding is that upon completion of the parkway the plaintiff will be deprived of the access across the land taken between his north and south tracts which he had previously enjoyed, and that in so far as his south tract is concerned the condemnation will prevent his right of access to an existing public highway. This destruction of the plaintiff's right of access to his south tract constitutes a taking of it in the constitutional sense. 18 Am. Jur. 789, § 158; *United States* v. *Welch,* 217 U. S. 333, 338, 50 Sup. Ct. 527; 15 L. R. A. (N. S.) 51, note; 18 Am. Jur. 814, § 183, and 756, § 132. This taking goes beyond an award for consequential damage to the plaintiff's remaining property by the taking of the center segment, which could be awarded on an appeal from the assessment of damages therefor, pursuant to the rule in the *Gaylord* case above recited. It constitutes rather a confiscation of the plaintiff's remaining land, for the direct taking of which the commissioner has assessed no damages. Against this the plaintiff is entitled to injunctive relief. *New York, N. H. & H. R. Co.* v. *Fair Haven & Westville R. Co.,* 70 Conn. 610, 628, 40 Atl. 607.

Neither the defendant's acquiescence in the plaintiff's use of the segment taken for access to the south tract up to the time of trial, nor the taking of the additional fifty-foot strip along the north side of it, which the defendant suggested in argument was to

provide for a new connecting highway, obviates this taking of the south tract. The establishment of such a highway would, however, terminate the taking and render it a temporary one for a public use. *McKeon v. New York, N. H. & H. R. Co.,* 75 Conn. 343, 347, 53 Atl. 656, affirmed 189 U. S. 508, 23 Sup. Ct. 853; *Vincent v. New York, N. H. & H. R. Co.,* 77 Conn. 431, 442, 59 Atl. 491; *Norwood v. Sheen,* 126 Ohio St. 482, 186 N. E. 102, 87 A. L. R. 1375, 1379. This being so, even though the state's plan involves an ultimate provision for access to the land in question, it cannot proceed with the work without an assessment made by the commissioner as best that can be estimated, for the taking of that land for the time intervening until access is provided.

There is error, the judgment is set aside, and the case remanded to the Superior Court to be proceeded with according to law.

In this opinion the other judges concurred.