THOMAS, Justice.
The appellants filed a bill of complaint in which they sought cancellation of a deed, executed by the Dade County Commission, alleged to have conveyed land to Atlantic Island Civic Association, Inc., without complying with Sec. 125.35, Florida .Statutes 1953, and F.S.A. The defendants filed answers admitting the material allegations of the bill and eventually the plaintiffs and defendants filed motions for summary decree. The latter prevailed.
The statute, which the appellants claim the county commission ignored, requires that real estate belonging to the county shall not be sold except at competitive sale after notice of the sale has been published once a week for two weeks.
We think we need hot pause to determine the academic question whether or not the chancellor erred when he granted the appellees’ motion for summary decree after the movants had admitted the material averments of a bill that he had refused, upon appellees’ motion, to dismiss. Although the answer admitted non-compliance with Sec. 125.35, supra, its applicability to the undisputed facts of this case was denied, and a pure question of law was presented for the chancellor’s decision. Cf. Wilson v. Bachrach, Fla., 65 So.2d 546.
The lone question necessary to be answered to dispose' of this litigation is the effect of the cited statute upon the peculiar transaction here involved. The appellants insist that' the conveyance was invalid because the law was not observed; the ap-pellees take the position that from its very nature the conveyance was not one which came within the purview of the statute.
In answering the question we must explore the history of the property and the *609 nature of the challenged conveyance. In 1925, Sunny Isles Ocean Beach Company laid out a subdivision and called it “Atlantic Island.” In the deeds conveying lots in the subdivision the grantees were granted riparian rights and water privileges on canals and waterways bordering their land, and perpetual, but not exclusive, rights and water privileges upon Atlantic Ocean “at the eastern terminus of the Atlantic Avenue road * *
The subdivider, in 1948, executed and delivered to the County of Dade a deed titled “Right-of-Way Deed To Dade County Conveys The Title for Highway Purposes” conveying to the grantee “and its successors in interest * * * for the purpose of a public highway and purposes incidental thereto” a strip of land 40 feet wide between Highway A-l-A and the Atlantic Ocean. This would constitute the east 40 feet of Atlantic Avenue if extended to the sea. Although the deed contained references to “land” and “lands” it was clearly a conveyance of an easement to the county as trustee for the public. This is plain from the body of the instrument as well as the title. It was expressly stated, aside from the qualification already quoted, that it was the “intention” of the grantor “to convey to the said County and its successors in interest, the land above described for use as a public highway and for all purposes incidental thereto” and the interest was further restricted by a provision that the “conveyance [was] made with the understanding that the lands * * * [should] be used by pedestrians only and that no vehicular traffic [should] be permitted thereon.” (Italics supplied.) It was further stipulated in the instrument that upon discontinuance of the use intended, the title should revert to the grantor, its successors and assigns.
Subsequently, in 1952, suit was brought against Sunny Isles Ocean Beach Company and the County of Dade in which a decree was sought construing the contracts and deeds issued by the former as granting the owners of lots in the subdivision a perpetual and exclusive easement. In this suit it was maintained on behalf of the county that the rights of lot-owners were not exclusive but, on the contrary, that the public possessed rights by virtue of the deed to the county. The plaintiffs prevailed, the chancellor holding that the “easement and right was * * * 'exclusively for the use of all of the present or subsequent owners of lands in the * * * subdivision * * * to the exclusion of all others” and the decree permanently enjoined the County of Dade “from interfering with, in any manner * * * the * * * perpetual and exclusive right and easement of the * * * property owners * *
So the county became the holder of an easement which the court held could not be used. What interest remained for sale according to the act is indeed obscure.
It appears at once that there was no occasion to invite competitive bids because the statute, Sec. 125.35, supra, applies only to property “belonging to the county” and the only interest that could be said to belong to the county was one available only, under the decree, to the owners of lots in the subdivision, to whom the county undertook to transfer it, and therefore no bidders, save those, could have been produced by publishing the notice prescribed in the statute.
We are impelled to accept the appellees’ view that “no sale” as contemplated by the statute was made, and we adopt this view despite the absence of any other statute authorizing the county actually to sell property belonging to it to private persons. Evidently the county resorted to the only means known to it of ridding itself of some vague interest in a parcel of land it once thought, and contended, made it a trustee of certain rights or privileges which should be enjoyed by the public. When it lost in its attempt to protect any such rights or privileges, the interest left, by reason of the deed to it, became so inconsiderable that the act of the county in *610 placing the interest where the chancellor had ruled the 'exclusive beneficial use rested could not be dignified as a sale of property “Not Needed for County Purposes,” to quote from the title of Chapter 23829, Laws of Florida, Acts of 1947, which has been incorporated in Florida Statutes as Sec. 12S.3S et seq., supra.
We do not disturb the summary decree.
Affirmed.
DREW, C. J., and ROBERTS and O’CONNELL, JJ., concur.