116 So.2d 8 (1959)
FLORIDA STATE TURNPIKE AUTHORITY, State Road Department of Florida and Dade County, Petitioners,
v.
ANHOCO CORPORATION, a Florida corporation, and Theatre Associates, Inc., a Florida corporation, Respondents.
ANHOCO CORPORATION, a Florida corporation, and Theatre Associates, Inc., a Florida corporation, Petitioners,
v.
FLORIDA STATE TURNPIKE AUTHORITY, State Road Department of Florida and Dade County, Respondents.
Supreme Court of Florida.
June 10, 1959.
As Amended November 6, 1959.
Rehearing Denied December 17, 1959.
*10 Gilbert A. Smith, Fort Lauderdale, for Florida State Turnpike Authority.
Ross H. Stanton, Jr., and Richard B. Austin, Tallahassee, for State Road Department of Florida.
Darrey A. Davis and Thomas C. Britton, Miami, for Dade County.
Walsh, Simmonite, Budd & Walsh, and Garland M. Budd, Miami, for respondents and petitioners.
THOMAS, Chief Justice.
Upon presentation of two petitions for certiorari by parties who had been appellants and appellees, respectively, in a case decided by the District Court of Appeal, Third District, the court concluded that in view of an apparent conflict between the decision of that court and a decision of the Supreme Court in Irv Enterprises, Inc. v. Atlantic Island Civic Association, Inc., Fla., 90 So.2d 607, the court would hear argument on the jurisdictional question involved in the first captioned cause and, once jurisdiction in this court was established, would pass upon the merits, and further that upon deciding jurisdiction should be assumed, would determine the second cause also because both present controversies arose from the same transaction and the points of law and salient facts involved in them were, therefore, closely allied.
We will discuss the cases in the order they are named in the caption.
The District Court of Appeal in the present litigation and the Supreme Court in the cited case dealt with instruments of identical form titled "Right-of-Way Deed to Dade County Conveys The Title for Highway Purposes." By the deeds were conveyed certain lands "for the purpose of a public highway and purposes incident thereto" and in them was expressed the intention of the grantors "to convey to the said County and its successors in interest, the land * * * for use as a public highway and for all purposes incidental thereto" with the stipulation that upon discontinuance of the use intended the title would revert to the grantors, their successors and assigns.
*11 This court held in the cited case that the county by the deed became the holder of an easement.
In the instant case the District Court of Appeal construed a deed of the exact form from Ellen S. Ragen to Dade County, conveying the south 30 feet of lots she owned, as including "not only the fee title to the twenty feet previously dedicated by plat but an additional ten feet in fee subject to the reversion contained in the deed." (Italics supplied.) Florida State Turnpike Authority v. Anhoco Corporation, Fla.App., 107 So.2d 51, 54.
This suit was instituted by the respondents who described themselves as owners and lessees of lots formerly owned by Ellen S. Ragen, facing State Road 826, on which they operated two outdoor motion picture theaters. They charged that the petitioners, by widening the road, had shut off direct ingress and egress to and from their property and so had destroyed their business. They sought a mandatory injunction restoring direct access to their theaters, and a judgment for the value of their land bordering the road, which they alleged the petitioners had taken, and for damages they claimed to have suffered.
Adverting briefly to the history of the property affected, this land, including the four lots of respondents, was subdivided by the then owner, Florida Southern Securities Company, in 1914. These lots were shown to abut a 20-foot strip, bounded on the south by the section line, and designated a "roadway". On the plat appeared the statement that roadways defined on it were "perpetually dedicated to the free use of the public * * *."
As we understand the case the facts are comparatively simple. The four lots border a "perpetual" easement established 45 years ago by the subdivider. The subsequent owner of them executed the deed we have described. The immediate question is whether by that instrument the grantor conveyed the south 30 feet of her property, including not only the fee title to the 20 feet previously dedicated by plat but an additional 10 feet in fee subject to the reversion contained in the deed, as the District Court held, or created by the deed an additional easement across the south end of the lots making the total right-of-way 50 feet wide.
We are constrained to adopt the latter construction. Following our opinion in Irv Enterprises, Inc. v. Atlantic Island Civic Association, Inc., supra, we cannot conclude that the deed in this case was intended to convey a larger estate, that is, the fee of the 20 feet already dedicated and an additional 10 feet in the same manner. In that case we held that a deed identical in form vested in the grantee-county only an easement and we are unable to detect any reason why the deed presently under study transferred any different, or greater, estate. Whether or not the District Court of Appeal was referred to our decision in the cited case we do not know but no mention of it appeared in that court's opinion.
Since the county had under its supervision a right-of-way of the width of 20 feet and obtained a deed conveying an easement 30 feet wide, it is difficult for us to understand how it could have been meant that the later deed included the earlier dedicated roadway. This is the interpretation given by the District Court of Appeal because that court felt that the later deed conveyed the fee but once it is held that only an easement was conveyed such an overlapping seems to us illogical.
Having reached the conclusion that the deed only added an easement 30 feet in width to a roadway already dedicated there is no occasion to explore respondents' proposition that the notation on the plat relative to measurement of lots in the subdivision should be taken into account. In the note it was provided that "[a]ll lots, unless otherwise marked are 330' by 660'. *12 Measurements of lots adjoining roads are taken from center of roadway." Whether the depth of the lots in question is measured from the center of the 20-foot roadway, shown on the plat, or a roadway of 40 feet that might have been contemplated becomes unimportant under our construction of the deed for the north line of the roadway is fixed and it became the south line of the additional easement.
In construing the deed with reference to respondents' lots we have been influenced by the provision of the same deed with relation to other property in the same subdivision but facing a road 40 feet wide. The easement granted was 15 feet, and, plainly, it could not overlap the one created by the dedication for the simple reason that it was narrower. In the light of all the facts, we must reject respondents' argument that the deed given the effect they claim for it was of special advantage to the county because it operated to deprive the grantor of the "right to dig ditches in the roadway," to quote from respondents' brief. We have already quoted the part of the initial dedication we considered relevant, that is, the part referring to the roadway. Added to the dedicatory language was the provision that the subdivider reserved unto itself and its successors and assigns "the right to construct along said roadways * * * canals for the drainage and use of said lands." (Italics supplied.) It is clear to us that this language does not justify the position that the purpose of the deed, so far as it related to this property, was to be rid of Ellen S. Ragen's right to dig a ditch "in" the roadway or, rather, in 15 feet of it.
We decide that the petition in the first cause was properly granted and that this portion of the judgment of the District Court of Appeal should be quashed with directions to enter one consonant with these views.
We are now brought to a discussion and decision of related problems arising in the second, companion, cause.
As we have already observed the petitioners, Anhoco Corporation and Theatre Associates, Inc., operated outdoor moving picture theaters on the property involved in this litigation. Patrons, it appears, could reach the theaters directly from Road 826 by a common entrance and could depart by separate routes. Then the respondents by a new road location and designation plat incorporated the right-of-way of the road and a strip of land 14 feet in width, claimed by petitioners, into a new highway called "Palmetto Feeder Road". Without permission of the petitioners, so they averred, and without compensating them, the respondents seized the 14-foot strip, excavated dirt from it, and impaired the use of the exit from the easternmost theater.
The chancellor found that the respondents changed the character of the road to such an extent as to cause a reversion of a part of the original right-of-way so that the petitioners were entitled to compensation for the reversionary title seized, for the strip taken, the value of the appurtenant easement of direct access destroyed, and all damages proximately flowing from the respondents' invasion, seizure and destruction.
The chancellor while recognizing the right of the respondents to elect to acquire petitioners' rights and titles did not command that condemnation be effected, but he entered a mandatory injunction requiring the respondents to restore to petitioners the right of access to their property until by eminent domain they were justly compensated.
The chancery court held that inasmuch as the respondents had taken some of petitioners' land and violated their right of access, the respondents were responsible for damages arising from the wrongful acts and that the court with the help of a jury would fix the amount. The court considered that the petitioners should recover for (1) the value of the strip of land taken, (2) the depreciation of rental value of the remaining lands arising from the unlawful taking *13 and disruption of access, and (3) fees and costs.
When the matter reached the District Court of Appeal it was decided in the opinion to which we have referred, and which is here under attack from two directions, that the chancellor ruled correctly as to the ownership by these petitioners of the 14-foot strip of land and, of course, they are satisfied with that part of the decision. But the District Court of Appeal reversed the chancellor on all other points and of this ruling the petitioners complain.
The petitioners' first point is, in brief, that the State Road Department undertook to extend the use of the roadway from "the conventional (land-service) highway" to a "limited access (traffic-service) highway" by authority of Chapters 334 to 339, the "Florida highway code of 1955" and that this worked a "diversion" from the use originally intended, and to which the land was dedicated, to such an extent as to constitute an abandonment of the original easement. Furthermore, they contend that the opinion of the District Court of Appeal "approving the diversion to the new use without compensation, is violative of Sections 1 and 12 of the Declaration of Rights, and Articles [sic] XVI, Section 29 of the Constitution of Florida, Amendments V and XIV of the United States Constitution * * *."
Before proceeding we should say that the opinion thus far is identical, except for one typographical correction, with the one rendered by the court initially and filed 10 June 1959. What follows expresses the view finally adopted by the court relative to the petition of Anhoco Corporation and Theatre Associates, Inc., after their petition for rehearing was granted, re-argument was heard and their contentions were further studied. Florida Turnpike Authority, State Road Department and Dade County did not seek to disturb the decision evidently being content with the court's view that an easement had simply been enlarged to a width of 50 feet by the questioned deed.
The petition of Anhoco Corporation and Theatre Associates, Inc., for a rehearing was granted on "the question of diversion, and whether or not the diversion brought into play the second paragraph of Sec. 338.04 [Florida Statutes 1955, F.S.A.] so that condemnation of the fee would be necessary and the opportunity then given [petitioners] to prove damages to [the] right of access under the first paragraph of Sec. 338.04 * * *."
To return to the decision of the District Court of Appeal it was there determined that the chancellor erred when he found that the use of the existing road as a limited access facility was inconsistent with the easement originally intended and that court cited the Highway Code, Sec. 334.02, Florida Statutes 1955, F.S.A., dealing generally with the highway system of the state. The court also referred to Sec. 338.01, Florida Statutes 1955, Fifth Part of Florida Highway Code, F.S.A., which provides authority to establish limited access facilities when considered necessary to the highway system. We will presently revert to this Chapter 338.
The District Court held, point-blank, that eventual limitation of access in furtherance of the road system did not amount to a diversion from the public purpose. Moreover, the District Court said the chancellor erred in enjoining interference with petitioners' direct access to the highway, when they could reach their property by secondary roads, inasmuch as owners of land adjacent to public ways have no vested right of ingress and egress that will not yield to public necessity. This principle was recognized and applied by this court in Weir v. Palm Beach County, Fla., 85 So.2d 865, and there is no disposition now to recede from the pronouncement in that case.
Finally, the District Court dealt with the matter of damages flowing from the taking of the land in dispute and procedure outlined by the chancellor for assessing them. *14 Elements of damage predicated upon tortious seizure were not, said the court, compensable because the Road Department is "immune from suit based upon a tort claim."
The 14-foot strip which by our decision of the first phase of the controversy was absorbed in the 50-foot right-of-way seems to have been the principal factor on which the ultimate decision of the District Court was based. That court held that the change from a conventional highway to a limited access highway was proper and legal to meet the public need and that compensation for damages suffered in the transition were not recoverable. All parts of the chancellor's decree except the adjudication of title of the 14-foot strip to be in the petitioners were reversed "with directions that proceedings should be instituted" to condemn it.
All in all, the present respondents have an easement for road purposes which they are undertaking to convert into a limited access highway. Obviously the change will result in material damage to the petitioners. Although vast authority has been granted by the legislature to secure the construction and maintenance of an adequate highway system, it does not follow that its exercise may submerge the rights of property owners to the point that these rights, or their property, may be taken without due process of law.
The rights of abutting owners may be subordinated to the public, and to that end regulated, as we held in Weir v. Palm Beach County, supra. But the situation in the present case is much more extreme. The right of access is not being regulated but is being destroyed. The petitioners are being relegated to entrance and exit via secondary roads running at right angles to the highway in question which their property fronts. This, we think, cannot be summarily done, and we think the legislature had no intention that it could be accomplished without compensation to the owners for loss that might be suffered by them.
In Chapter 338 we find that although the first section, 338.01, confers on the "highway authorities of the state [the extensive power] to plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide limited access facilities" latter parts of the chapter impose conditions for the protection of property owners. In Sec. 338.04 it is specified that for the purposes of the law the authorities "may acquire private or public property and property rights for limited access facilities * * * including rights of access * * *." (Italics supplied.) And immediately following in a second paragraph of the section, is this significant language: "All property rights acquired under the provisions of this law shall be in fee simple."
In the situation described we are convinced the respondents should be enjoined from continuing with the conversion of the highway into a limited access facility or interfering with petitioners' right of ingress and egress until by eminent domain they have obtained the property and the property rights in fee simple as the legislature directed. In the course of the proceedings the petitioners will have the opportunity to present evidence of the value to them of the "property and property rights" including the right of "access", which will be acquired for "limited access facilities." Sec. 338.04(1), supra.
We think that one other aspect of this case should be discussed before we conclude our comment. As we have seen, the chancellor had ordered that the cause continue on the lone question of damages and had then specified the elements as compensation (1) for taking the portion of the lands which had never before been impressed with an easement, (2) for depreciation of rental value, and (3) for fees and costs. This, said the District Court of Appeal, was error, and we quite agree.
*15 Doubtless the land to which the chancellor referred was the 14-foot strip and, we may add, this parcel was not only considered by the equity court but also by the District Court of Appeal as a salient if not a controlling factor in the litigation. But, as we decided on the companion petition for certiorari, this strip was incorporated in the easement under our construction of the later deed. Despite this disagreement in respect of the effect of that instrument we think the basic decision of the District Court of Appeal is not disturbed. For all practical purposes the requirement to condemn the fee and the incidental right of access may be substituted for the requirement to condemn the property which the chancery and district courts, under their interpretation of the deed, considered to have been taken by the respondents.
If the condemnation of the fee underlying the easement is not effected the petitioners' right of access will not be destroyed though it may be regulated; if the action in eminent domain is begun then any damages suffered by these petitioners may be adjudicated.
We agree with the District Court of Appeal that there is no occasion or authority to proceed to fix damages independently of the condemnation action.
The petitioners argue that the case of State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868, is authority for such procedure but with this we disagree. Our examination of the opinion and the original file in that litigation demonstrates that the question of interim damages was not presented. The relief granted in that case and the relief granted by the present opinion are virtually the same, that is, prevention of the operation until the petitioners are compensated for their property and rights in an action of eminent domain. Nor have we found that the decision of the District Court of Appeal, First District, in State Road Department of Florida v. Darby, Fla. App., 109 So.2d 591, is authority for the position.
The petition is granted with directions that the decision of the District Court of Appeal, Third District, be revised to conform to these views.
TERRELL, HOBSON and THORNAL, JJ., concur.
DREW, J., dissents in part.
DREW, Justice (dissenting in part).
I concur in that portion of the opinion and judgment in this cause holding that the respondents' easement for highway purposes along petitioners' property extends the full width of fifty feet.
I cannot agree with that portion of the opinion and judgment holding that the petitioner is entitled to damages for what the opinion designates as the destruction of the right of access to petitioners' property. I think the record establishes that there has been no destruction of the right of access but a mere regulation thereof. The correctness of this conclusion is fortified by the statement in the majority opinion "[t]he petitioners are being relegated to entrance and exit by secondary roads running at right angles to the highway in question which their property fronts." A property owner does not have the right to enter upon a public highway from an adjacent property wherever he chooses. Such rights have always been subject to regulation by the public authorities and this Court, for more than seventy years, has held that an owner has no right of action for the impairment or destruction of the incidental rights of ingress and egress and of light and air which the street affords where there is no diversion of the street from its proper street purposes.[1] I find nothing in Chapter 338, F. *16 S.A., which in any way changes or alters this rule. On the contrary, the statute[2] itself provides that:
"No person shall have any right of ingress or egress to, from or across limited access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time."
In this respect the majority seems to conclude that Section 338.04, F.S.A. requires the authorities to condemn and acquire the fee of the roadway in order to establish a limited access facility and in such proceedings to pay the land owner the damages which may be occasioned by interfering with his rights of access. Section 338.04 merely provides that the authorities may acquire private or public property or property rights for limited access facilities and when such action is taken, such rights shall be acquired in fee simple. Other portions of the act, notably Sections 338.01 and 338.02, clearly contemplate establishing limited access facilities in existing highways and I find no requirement in the statute or elsewhere that, before doing so, the authorities are required to acquire the fee simple title to the existing roadways.
If the land owner here is entitled to be compensated, it would appear that a grave injustice was done to the land owner in the Lewis case[3] and the Weir case[4] and in the numerous other cases cited in the opinion in the Lewis case. I can see no difference in the factual situations involved.
It is my view that the district court was entirely correct in its disposition of this phase of the litigation, and I would affirm that portion of the questioned opinion appearing as headnotes 7, 8, 9, 10 and 11 on page 55 of 107 So.2d.
NOTES
[1] See Lewis v. State Road Department, Fla. 1957, 95 So.2d 248, for a discussion of this proposition and a review of the long and unbroken line of decisions of this Court to this effect.
[2] 338.03(2), F.S.A.
[3] Supra, note 1.
[4] Weir v. Palm Beach County, Fla. 1956, 85 So.2d 865.