144 So.2d 793 (1962)
ANHOCO CORPORATION, a Florida Corporation, and Antwin Theaters, Inc., a Florida Corporation, Petitioners,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Respondent.
No. 31355.
Supreme Court of Florida.
March 7, 1962.
Rehearing Denied October 17, 1962.
Ward & Ward, Garland M. Budd and Simmonite, Budd & Walsh, Miami, for petitioners.
Darrey A. Davis and Thomas C. Britton, Miami, for respondent.
THORNAL, Justice.
By petition for a writ of certiorari we have for review a decision of the District Court of Appeal, Third District, allegedly in conflict with a prior decision of this Court and a decision of the Second District. Art. V, Sec. 4, Florida Constitution, F.S.A.
*794 The decision submitted for review is Anhoco Corp. et al. v. Dade County, Fla. App., 1961, 127 So.2d 464. Petitioners claim it to be in conflict with the prior decision of this Court in Florida State Turnpike Authority, et al., v. Anhoco Corp. et al., Fla. 1959, 116 So.2d 8, and the decision of the District Court of Appeal, Second District, in Broward County v. Bouldin, Fla.App., 114 So.2d 737. An earlier appearance of this case in the District Court of Appeal, Third District, was Florida State Turnpike Authority, et al. v. Anhoco, et al., Fla.App., 107 So.2d 51. We shall refer to both petitioners as Anhoco because the two corporations are owned and controlled by the same stockholders.
Following our decision in 116 So.2d 8, the cause was remanded to the circuit court. Reference to our last decision will reveal that we sustained an injunction against Dade County, Florida Turnpike Authority and Florida State Road Board, prohibiting those agencies from continued interference with Anhoco's pre-existing right of access to a land service road known as Palmetto Road, SR 826, until such time as those agencies condemned the fee in the road right-of-way, together with Anhoco's right of access. The instant case arises out of an eminent domain proceeding by Dade County alone to condemn the fee in the right-of-way, as well as the right of access pursuant to our previous decision. Neither the Road Department nor the Turnpike Authority was a party to the instant condemnation suit. The prior decisions reveal that the three agencies of government had entered into a contractual arrangement to convert the land service road into a limited access facility which would accommodate traffic demands between the south end of the Florida Turnpike and west side of Dade County in the vicinity of Kendall. This was done pursuant to statute.
In order to accomplish the construction of the limited access facility Dade County entered into a contract with the Road Department to acquire the necessary right-of-way. The former land service road, SR 826, was to be converted into the limited access highway. This agreement was an essential incident to the construction of the limited access facility through the cooperative effort of the State Road Department and the Turnpike Authority. The comprehensive arrangement was in the nature of a three-way obligation whereby the Road Department and Turnpike Authority would build the road upon the right of way acquired by Dade County. The new facility is known as Golden Glades Drive.
Reference to earlier decisions will reveal that the petitioners here, Anhoco et al., owned a large parcel of land on the north side of the previously existing land service highway. On this land they had constructed two large outdoor theatres designated as a Western Theater and an Eastern Theater. It is claimed by the petitioners that in August 1957, the Road Department in carrying out the project plan, dug a ditch across an exit road theretofore existing between the Eastern Theater and the former land service road, SR 826. It being impossible for patrons to drive out of this theater, it remained closed until October 1958, when the Road Department apparently completed a service road from N.W. 32nd Ave. westwardly and dead ending at Anhoco's east property line. It also completed a similar service road from N.W. 37th Ave. eastwardly, dead ending at Anhoco's west property line. However, during the same month the State Road Department dug a ditch across the road which had previously provided direct access to both theaters from former SR 826. At this point Anhoco reopened its Eastern Theater but was compelled to close the Western Theater because no motor vehicle could enter or leave the property.
Dade County filed the instant condemnation suit to take the fee in the right-of-way of former SR 826, as well as Anhoco's right of access to that road. This petition was filed December 24, 1959. It was accompanied *795 by a declaration of taking pursuant to Chapter 74, Florida Statutes, F.S.A. Our present problem arises out of that litigation. The trial judge held that the value of Anhoco's property, primarily the right of access, should be determined as of February 8, 1960, the date of the order of taking in the current suit. Anhoco claims that its property should be valued as of July or August 1957, when the Road Department initially destroyed its right of access. When the instant condemnation was filed the Road Department had eliminated the previously mentioned service roads and had constructed across the entire front of the petitioner's property a so-called "frontage road" paralleling the new limited access highway and lying between that highway and the south boundary of Anhoco's property. This frontage road extended the full distance between 32nd and 37th Avenues, connecting with the New Golden Glades Drive at those points. This new frontage road appears to have furnished to Anhoco a direct access road connected with the new highway and so far as this record reveals, apparently remedied the condition resulting from the destruction of its previous access to SR 826. By limiting Anhoco to damages as of the date of the current order of taking, the circuit judge obviously held that the petitioner could not present evidence on the matter of damages suffered as the result of the destruction of its right of access which he had previously enjoined. When the current condemnation proceeding was filed it was shown that the property was serviced by the new frontage road, hence the jury found nominal damages to Anhoco for the acquisition of the fee underlying old SR 826, and no damages for the destruction of its access. This ruling of the circuit judge was affirmed by the District Court of Appeal, Third District, 127 So.2d 464. It is this decision which we now review. By our decision in Florida State Turnpike Authority et al. v. Anhoco et al., Fla. 1959, 116 So.2d 8, we held:
1. The State Road Department by virtue of a conveyance from Dade County owned merely an easement for public road purposes in former SR 826, the original land service road.
2. Anhoco owned the basic fee in SR 826, with an easement of ingress and egress to and from its theaters which abutted the land service highway.
3. Section 338.04, Florida Statutes, F.S.A., a part of the limited access facilities statute, requires a condemning authority to acquire the fee simple title to a right-of-way when it seeks to obtain land upon which it contemplates constructing a limited access road. In the acquisition process the condemning authority must likewise acquire the "rights of access" of abutting owners adjoining an existing land service road which is being converted into limited access.
4. In the chancery action then under review, the same being in the nature of an "inverse condemnation" proceeding, the chancellor could not as an incident to the injunction undertake to fix damages in the action. When condemnation should be instituted then "any damages" suffered by the property owner "may be adjudicated." There was no authority to fix and collect damages in such chancery action independently of the condemnation action.
5. All parties were enjoined from continuing with the conversion of SR 826 into a limited access facility and from further interfering with Anhoco's right of access until they obtained the property and property rights in fee simple as required by the Legislature. In the course of any such condemnation proceeding the property owner was expressly granted the opportunity "to present evidence of the value to them of the property and property rights, including the right of access which will be acquired for limited access facilities."
6. The requirement that the State Road Department and Dade County condemn the *796 fee and incidental right of access was substituted for the chancellor's decision, approved by the Court of Appeal, to the effect that the fee had already been acquired. The chancellor was correct in holding that compensation would have to be paid for damages resulting from the destroyed right of access. The District Court erred in holding to the contrary. The facts revealed a destruction of the right of access and not the mere regulation thereof under the police power.
The holdings which we have above announced constituted the substance of our last decision appearing at 116 So.2d 8.
As mentioned in the forepart of this opinion, when the cause was remanded Dade County alone instituted the current condemnation action which produced the decision under review. The chancellor with the approval of the District Court of Appeal in the instant case held:
1. The value of Anhoco's property should be fixed, as to Dade County as of the time of the order for the declaration of taking in the instant suit. By that time Anhoco's original right of access was non-existent because it had been destroyed by the State Road Department as revealed in the original litigation. The completed new "frontage road" had by then been constructed.
2. Damages for the precipitous destruction of Anhoco's right of access could not be recovered against Dade County because the State Road Department, not Dade County, had destroyed the access.
3. There could be no recovery of costs of the prior litigation which was made necessary by the action of the County and State Road Department and which was forced upon Anhoco in order to protect its right of access against encroachment.
Anhoco now contends that this latest decision of the District Court of Appeal, 127 So.2d 464, should be quashed because:
1. It denied to Anhoco the claimed right of offering evidence as to the value of its property as of the time of the initial occupancy by Dade County and the State Road Department. The real effect of this contention is that Anhoco should have been permitted to submit evidence in the condemnation proceeding to establish the damages suffered by it as the result of the initial encroachment upon its right of access in the execution of the project.
2. It should have been allowed to recover the costs of the original litigation as elements of damages suffered by it as a result of the combined efforts of the State Road Department and Dade County to appropriate its property without due process.
The District Court upheld Dade County's contention that the latter should not have been held liable for the temporary destruction of Anhoco's right of access for the reason that the actual interference with the access was the work of the State Road Department, rather than Dade County. We are compelled to disagree. It will be recalled that this entire project was composite, cooperative effort between Dade County, the State Road Department, and the Florida Turnpike Authority. The original entry upon the land and the interference with Anhoco's easement was occasioned by Dade County's agreement to obtain the right-of-way and its conveyance of the right-of-way to the State Road Department. By the agreement Dade County committed itself to finance the cost of acquisition of the right-of-way and the right of access. This as a matter of law would include the cost of obtaining Anhoco's right of access to the original land service road. The original suit was against the three governmental agencies. All three were enjoined from further proceeding until Anhoco's property rights were legally condemned or otherwise paid for. In the instant proceeding Dade County actually minimizes the damages which it would have to pay by claiming *797 the benefits of the newly completed frontage road which provides Anhoco with access to the new limited access facility. Although, admittedly, the three agencies of government are separate, they must share jointly and severally the responsibility for the appropriation of private property essential to the accomplishment of their joint objective. For Dade County now to disclaim any responsibility for the original encroachment by its collaborator the State Road Department is reminiscent of the deception which Isaac suspected when he observed "the voice is Jacob's voice but the hands are the hands of Esau." Genesis 27:22. We, therefore hold that the respondent is liable for any award properly made to Anhoco for the temporary encroachment upon its right of access.
In our opinion in 116 So.2d 8, we specifically recognized Anhoco's right of access and squarely held that under Chapter 338, Florida Statutes, F.S.A., and particularly Section 338.04, the condemning authorities, in the establishment of a limited access facility must compensate abutting property owners for the destruction of rights of access to a previously existing land service road which is being converted into the limited access facility. We held also that in any eminent domain proceeding any damages suffered by the abutting property owner may be adjudicated and awarded. We did hold that the damages could not be awarded as an incident to the equity injunction suit. We did not hold that such damages as had resulted from the interference with Anhoco's right of access must go uncompensated. The holding of our prior decision in this regard was identical with the holding of the District Court of Appeal, Second District, in Broward County v. Bouldin, Fla.App., 114 So.2d 737. Respondent urges that the Bouldin decision itself collides with the prior decision of this Court in the instant case. The two decisions are identical in regard to the point in controversy. We fear that the District Court here, at the insistence of respondent, has misconstrued our prior decision in this case. We there stated "As we have seen, the chancellor had ordered that the cause continue on the lone question of damages * * *." We agreed that this was error. We did not hold that these damages could not be recovered in the subsequent eminent domain proceeding. In fact, we specifically held that they could be. This was, in effect, identical with the holding in the Bouldin case. Consequently, in this respect the decision below collides with the prior decision of this Court in this case and the decision of the District Court of Appeal, Second District, in the Bouldin case.
There can now be little doubt that when an established land service road is converted into a limited access facility the abutting property owners are entitled to compensation for the destruction of their previously existing right of access. A limited access facility may be described generally as a broad super-highway with traffic lanes separated by a central median strip, and with ingress and egress to and from the highway only at designated interchanges or crossovers, oftentimes substantial distances apart. Under limited access facilities statutes almost identical to ours, the courts have uniformly held that an abutting property owner is entitled to compensation for the destruction of a pre-existing right of access to a land service road upon which the limited access highway is constructed. State v. Marion Circuit Court, 1958, 238 Ind. 637, 153 N.E.2d 327; Atkinson v. State Highway Commission, 1959, 184 Kan. 658, 339 P.2d 334; Smith v. State Highway Commission, 1959, 185 Kan. 445, 346 P.2d 259; State Highway Commission v. Burk, 1954, 200 Or. 211, 265 P.2d 783; Arkansas State Highway Commission v. Union Planters National Bank, 1960, 231 Ark. 907, 333 S.W.2d 904; Mississippi State Highway Commission v. Finch, 1959, 237 Miss. 314, 114 So.2d 673.
The rule requiring compensation under such circumstances applies regardless of the specific requirements of a statute. *798 State ex rel. Morrison v. Thelberg, 1960, 87 Ariz. 318, 350 P.2d 988; Pima County v. Bilby, 1960, 87 Ariz. 366, 351 P.2d 647; State v. McDonald, 1960, 88 Ariz. 1, 352 P.2d 343; Arkansas State Highway Commission v. Union Planters National Bank, supra; Mississippi State Highway Commission v. Finch, supra; McMoran v. State, 1959, 55 Wash.2d 37, 345 P.2d 598; Simmons v. State Highway Commission, 1955, 178 Kan. 26, 283 P.2d 392; State ex rel. Sternoff v. Superior Court, 1958, 52 Wash.2d 282, 325 P.2d 300; Rothwell v. Linzell, 1955, 163 Ohio St. 517, 127 N.E.2d 524.
We are not here confronted by the exercise of the police power to regulate the flow of traffic or to control the operation of traffic or to prescribe reasonable limitations on the number of driveways or access facilities that might be allowed an abutting owner adjoining a land service highway. Admittedly, such regulations as prohibiting U turns or left turns, or establishing oneway traffic or specifying the location of driveways in and out of abutting property are all the subject of police regulations which require no compensation to abutting owners. Mississippi State Highway Commission v. Finch, supra; Rothwell v. Linzell, supra; New Way Family Laundry Inc. v. Toledo, 1960, 171 Ohio St. 242, 168 N.E.2d 885; Arkansas State Highway Commission v. Union Planters National Bank, supra; Pennysavers Oil Company v. State, Tex.Civ.App. 1960, 334 S.W.2d 546.
As we pointed out in our prior decision, the right of access was destroyed not merely regulated. We do not here deal with the relative convenience of one abutting property owner as compared to others similarly conditioned. If injury or inconvenience is the same in kind as that suffered by others similarly situated, but different only in degree, compensation is not recoverable. Henry L. Doherty & Co. v. Joachim, 146 Fla. 50, 200 So. 238; Weir v. Palm Beach County, Fla. 1956, 85 So.2d 865. Moreover, the Legislature has specifically required compensation for the destroyed right of access. Sec. 338.04, Florida Statutes, F.S.A.
It will be recalled that by the time the instant condemnation suit was instituted the State Road Department had constructed a frontage road paralleling the limited access facility and running the length of Anhoco's property. This road appears to have provided reasonable access to the new highway from both theaters. If this had been done at the outset much of the instant problem would never have arisen. The construction of these frontage service roads has apparently been devised as a means of minimizing the otherwise severe damage that results from the destruction of an abutting owner's right of access to the pre-existing land service highway. State ex rel. Morrison v. Thelberg, supra; Pennysavers Oil Company v. State, supra; Carney v. Mississippi State Highway Commission, 1958, 233 Miss. 598, 103 So.2d 413; Schnider v. State, 1952, 38 Cal.2d 439, 241 P.2d 1, 43 A.L.R.2d 1068, 1079.
Although the record is not sufficiently clear to specify the exact periods involved, it is apparent that Anhoco suffered substantial damages as a result of destruction of two or more of its rights of access prior to the establishment of the new frontage service road. It is entitled to compensation for this damage. Ordinarily, the measure of damages for the taking of a right of access is the difference between the value of the property with the right attached and its value with the right destroyed. Schnider v. State, supra, in particular, 43 A.L.R.2d pp. 1077-1079; Nichols v. Commonwealth, 1954, 331 Mass. 581, 121 N.E.2d 56; Burnquist v. Cook, 1945, 220 Minn. 48, 19 N.W.2d 394; In re Appropriation of Easement, etc., 1952, 93 Ohio App. 179, 112 N.E.2d 411, appeal dismissed, 158 Ohio St. 285, 109 N.E.2d 3; State v. Ward, 1953, 41 Wash.2d 794, 252 P.2d 279; State Roads Commission v. Franklin, 1953, 201 Md. 549, 95 A.2d 99; *799 Stock v. Cox, 1939, 125 Conn. 405, 6 A.2d 346; Nichols on Eminent Domain (3d ed. 1951), Secs. 14.2431, 10.221, 6.32.
In this instance the right was not permanently destroyed. However, the fact that the condemning authorities subsequently provided a substituted type of access which should have been provided originally will not suffice to compensate for the harm which was done in the interim. Stock v. Cox, 125 Conn. 405, 6 A.2d 346; Casa Loma Springs Development Co. et al. v. Brevard County et al., 93 Fla. 601, 112 So. 60. We should interpolate, of course, that when assessing any damages suffered Anhoco is not entitled to recover for losses occasioned merely by the customary limitations on the flow of traffic over a highway which is being constructed under so-called "traffic conditions." Every business abutting an established highway which is being reconstructed suffers the same type of loss. To this extent any damage suffered is damnum absque injuria.
Because of the conflicts between the decision of the District Court of Appeal and the prior decision of this Court, which we have pointed out, it is necessary that the decision under review be quashed. The cause is remanded to the District Court of Appeal, Third District, with directions to remand the same to the trial court for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C.J., and TERRELL and THOMAS, JJ., concur.
DREW, J., concurs specially.
DREW, Justice (concurring specially).
I am unable to agree with my esteemed associates that we have jurisdiction of this cause on the conflict theory. The majority, however, having reached a contrary view, I concur in the able opinion and judgment of Mr. Justice THORNAL on the merits.