538 So.2d 846 (1989)
PALM BEACH COUNTY, Petitioner,
v.
Mildred TESSLER, et al., Respondents.
No. 71962.
Supreme Court of Florida.
February 16, 1989.
*847 Shirley Jean McEachern, Asst. County Atty., West Palm Beach, for petitioner.
James J. Richardson, Tallahassee, James W. Vance, P.A., West Palm Beach, and Alan E. DeSerio of Brigham, Moore, Gaylord, Wilson, Ulmer, Schuster & Sachs, Tampa, for respondents.
Maxine F. Ferguson, Appellate Atty. and Thomas H. Bateman, III, Gen. Counsel, Tallahassee, amicus curiae for State of Fla., Dept. of Transp.
GRIMES, Justice.
This case comes to us from the Fourth District Court of Appeal certifying a question of great public importance. The question is:
ARE THE OWNERS OF COMMERCIAL PROPERTY LOCATED ON A MAJOR PUBLIC ROADWAY ENTITLED TO A JUDGMENT OF INVERSE CONDEMNATION WHEN THE COUNTY GOVERNMENT BLOCKS OFF ANY ACCESS TO THE PROPERTY FROM THE ROADWAY AND LEAVES ACCESS THERETO ONLY THROUGH A CIRCUITOUS ALTERNATIVE ROUTE THROUGH RESIDENTIAL STREETS?
Palm Beach County v. Tessler, 518 So.2d 970, 972 (Fla. 4th DCA 1988). We have jurisdiction pursuant to article V, section 3(b)(4), of the Florida Constitution.
The subject real estate, which is zoned commercial, is located at the intersection of Spanish Trail and the main east-west thoroughfare in Boca Raton, Palmetto Park Road. The respondents own and operate a beauty salon that fronts on Palmetto Park Road. As part of a bridge construction and road-widening project, the county planned to construct a retaining wall directly in front of the respondents' property, which would block all access to and visibility of the respondents' place of business from Palmetto Park Road. While the property will continue to have access to Spanish Trail, that street is intended to pass underneath the newly constructed bridge on Palmetto Park Road. The wall will extend to a point approximately twenty feet east of the property. Consequently, the respondents and their customers will only be able to reach the property from Palmetto Park Road by an indirect winding route of some 600 yards through a primarily residential neighborhood. A sketch of the area which illustrates the effect of the proposed construction is appended to the opinion of the district court of appeal.
There were two issues before the trial court: (1) whether the county's construction of a retaining wall occurred on private property or in the public right of way; and (2) whether the construction of this wall amounted to a taking for purposes of inverse condemnation. The court found that the wall was constructed in the public right of way, and that finding has not been disputed. However, the court determined that a case of inverse condemnation had been proven because the property owners were denied "suitable access" to their property as a result of the retaining wall. The Fourth District Court of Appeal affirmed.
Where there has been no taking of the land itself, when is a property owner entitled to be compensated for loss of access to the property caused by governmental intervention? The county argues that unless the property owner has been deprived of all access, the law of eminent domain does not recognize that a taking has occurred. Respondents contend that a taking has occurred when any portion of the access has been eliminated and that the suitability of the remaining access may be taken into account in the assessment of compensation. We reject both positions as being extreme.
Without placing emphasis on whether other access was available, several early Florida cases announced the principle that the rights of abutting landowners were subordinate to the needs of government to improve the roads and that any loss of access was damnum absque injuria. Weir v. Palm Beach County, 85 So.2d 865 *848 (Fla. 1956); Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394 (1906); Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457 (1891). However, in Benerofe v. State Road Department, 217 So.2d 838, 839 (Fla. 1969), this Court said:
[E]ven when the fee of a street or highway is in a city or a public highway agency, the abutting owners have easements of access, light, and air from the street or highway appurtenant to their land, and unreasonable interference therewith may constitute a taking or damaging within constitutional provisions requiring compensation therefor. Such easements may be condemned originally, as in the case of a limited access highway; or they may be acquired later on, if need for their acquisition arises, by the municipal or highway authorities; or compensation may be required therefor in timely and proper cases by the abutting landowners where deprivation thereof actually occurs without prior acquisition.
Accord Department of Transp. v. Jirik, 498 So.2d 1253 (Fla. 1986). Thus, under current law, there can be no doubt that where access is entirely cut off, a taking has occurred.
Several other decisions of this Court lend support to the proposition that under some circumstances there may be a taking even though access to property is not entirely cut off. In Florida State Turnpike Authority v. Anhoco Corp., 116 So.2d 8 (Fla. 1959), the complaining parties owned property abutting State Road 826 on which two outdoor movie theaters were operated. In the course of converting State Road 826 into a feeder road, the Turnpike Authority dug a ditch along the edge, thereby relegating the owners "to entrance and exit via secondary roads running at right angles to the highway in question which their property fronts." Id. at 14. While acknowledging that the rights of abutting owners may be subordinated to the public and thereby regulated, the Court reasoned that rather than being regulated, the right of access in this instance was being destroyed. The Court held that the owners were entitled to be paid for their temporary loss of access to State Road 826.
Likewise, in Department of Transportation v. Stubbs, 285 So.2d 1 (Fla. 1973), property was being condemned in connection with the construction of Interstate 295. As a consequence, a service road which adjoined the property was eliminated, although the property could still be reached by crossing an overpass from the opposite side of I-295. Relying upon the rationale of Anhoco, the Court held that the owner was entitled to compensation for loss of access. The Court noted:
The rationale for granting compensation, although not always expressed in judicial pronouncements, is that "property" is something more than a physical interest in land; it also includes certain legal rights and privileges constituting appurtenants to the land and its enjoyment. This is part of a gradual process of judicial liberalization of the concept of property so as to include the "taking" of an incorporeal interest such as the acquisition of access rights resulting from condemnation proceedings. See Stoebuck, The Property Right of Access Versus the Power of Eminent Domain, 47 Texas L.Rev. 733 (1969).
Id. at 2.
Palm Beach County argues that Anhoco and Stubbs are not authority for recovery in the instant case because both of those decisions involved takings under section 338.04, Florida Statutes (1973), which mandated that property owners be reimbursed for loss of access incurred in the construction of limited access roads. However, when the Anhoco case came back to the Court for enforcement of its earlier mandate, we observed that the rule requiring compensation when the conversion of a land service road into a limited access facility cuts off access to abutting property owners "applies regardless of the specific requirements of a statute." Anhoco Corp. v. Dade County, 144 So.2d 793, 797 (Fla. 1962). This would seem to follow once it is recognized, as Florida does, that the right of access is a property right which appertains to the ownership of land. We did not *849 intend that Division of Administration v. Capital Plaza, Inc., 397 So.2d 682 (Fla. 1981), be read as limiting the rationale of Stubbs to takings under section 338.04. The Capital Plaza case involved a reduction in the flow of traffic. In the course of the widening of a road, a median was installed so that northbound drivers could no longer turn across traffic directly into the landowner's service station. We ruled that this did not involve a deprivation of access but rather an impairment of traffic flow for which no recovery was available. Accord Jahoda v. State Rd. Dep't, 106 So.2d 870 (Fla. 2d DCA 1958).
In Pinellas County v. Austin, 323 So.2d 6 (Fla. 2d DCA 1975), the county had vacated a dirt road leading to the Austins' property. Two alternative modes of access existed. One was an unimproved platted road, while the other required traffic to cross an old wooden bridge which could not support service vehicles such as garbage and fire trucks. The court said:
On the other hand, not everyone owning property near a street which has been vacated is entitled to be compensated. A landowner must demonstrate that he has suffered special damages which are not common to the general public. 11 E. McQuillin, The Law of Municipal Corporations, § 30.188 (3d ed. 1964). Thus, in Linning v. Board of County Commissioners of Duval County, Fla. App. 1st, 1965, 176 So.2d 350, the court held that a person who owned a home about 250 feet away lacked standing to contest the validity of the vacation of a street because he had not shown an injury different in kind and degree from that sustained by other property owners or citizens of the community. See 11 E. McQuillin, The Law of Municipal Corporations, §§ 30.192-30.194 (3d ed. 1964). The fact that a person loses his most convenient method of access is not such damage which is different in kind from damages sustained by the community at large where his property has suitable access from another street even though the alternate route is longer. Bozeman v. City of St. Petersburg, 1917, 74 Fla. 336, 76 So. 894; Halpert v. Udall, S.D. Fla. 1964, 231 F. Supp. 574. Cf. Daugherty v. Latham, 1937, 128 Fla. 271, 174 So. 417.
Id. at 8-9. The court held the evidence sufficient to support the conclusion that the Austins had suffered a sufficient impairment of their right of access which was to be different in kind from the public at large. The court noted, however, that the existence of the other means of access could have the effect of reducing the amount of the Austins' recovery. Cf. City of Port St. Lucie v. Parks, 452 So.2d 1089, 1090-91 (Fla. 4th DCA) ("Diminishment in the quality of access ... means an actual impairment which results in some deprivation to the property, but does not include mere inconvenience."), review denied, 459 So.2d 1041 (Fla. 1984).
Several principles emerge from an analysis of these and other cases.[*] There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist. A taking has not occurred when governmental action causes the flow of traffic on an abutting road to be diminished. The extent of the access which remains after a taking is properly considered in determining the amount of the compensation. In any event, the damages which are recoverable are limited to the reduction in the value of the property which was caused by the loss of access. Business *850 damages continue to be controlled by section 73.071, Florida Statutes (1987).
Applying these principles to the instant case, we conclude that the district court of appeal properly permitted the respondents to recover damages for their loss of access to Palmetto Park Road. The respondents lost more than their most convenient means of access. The evidence supports the conclusion that there was a substantial loss of access. As stated by the court below:
They have shown that the retaining wall will require their customers to take a tedious and circuitous route to reach their business premises which is patently unsuitable and sharply reduces the quality of access to their property. The wall will also block visibility of the commercial storefront from Palmetto Park Road.
518 So.2d at 972.
We note that the district court of appeal held that it was a question of fact as to whether the walling off of the respondents' commercial property and circuitous alternative to reach it amounted to more than inconvenience. Actually, in an inverse condemnation proceeding of this nature, the trial judge makes both findings of fact and findings of law. As a fact finder, the judge resolves all conflicts in the evidence. Based upon the facts as so determined, the judge then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity. Should it be determined that a taking has occurred, the question of compensation is then decided as in any other condemnation proceeding.
As related to the facts of this case, we answer the certified question in the affirmative. We approve the decision of the district court of appeal.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
NOTES
[*] We acknowledge that some of the cases we have considered involved a partial taking of land as well as the destruction of access. However, because Florida recognizes that the destruction of the right of access is compensable even where land is not taken, we believe the reasoning of those cases may be appropriately considered in our analysis.