744 So.2d 1098 (1999)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
S.W. ANDERSON, INC., Appellee.
No. 98-3198.
District Court of Appeal of Florida, First District.
October 6, 1999.
Rehearing Denied November 10, 1999.
Pamela S. Leslie, General Counsel, and Gregory G. Costas, Assistant General Counsel, Tallahassee, for Appellant.
Will J. Richardson, Richardson Law Offices, P.A., Tallahassee, for Appellee.
KAHN, J.
This inverse condemnation case arises out of a bridge construction project on State Road 79 (SR 79) in Bay County. The project involved construction of a new high level bridge across West Bay, and partial realignment of SR 79 by the Department of Transportation. Appellee Anderson owned commercial property to the east of, but not abutting, the old SR 79 right-of-way. The circuit court found a compensable taking because, in its view, "As a consequence of the construction of the SR 79 bridge, plaintiffs right of access has been substantially diminished because the remaining route to the property is long, circuitous, and impractical." The circuit court relied upon Palm Beach County v. Tessler, 538 So.2d 846 (Fla.1989). Under Tessler, an owner of lands abutting a public highway enjoys an easement of access, subject to the constitutional right of just compensation where government action causes a substantial loss of such access. See id. at 848-49. We reverse because Anderson's access to old SR 79 was neither destroyed nor substantially diminished by the new construction.
Before the construction, Anderson and its customers gained access to SR 79 by way of a divided drive across property owned by a neighbor, Mrs. Brown, or by a roadway described as Bayview Circle, across land owned by the St. Joe Paper *1099 Company. Neither Mrs. Brown nor St. Joe was party to the action below. In its final judgment, the trial court found insufficient evidence to establish a prescriptive easement across the St. Joe property to and from SR 79, but did find "an implied grant of way of necessity across the property now owned by Mrs. Brown...." The trial judge's reliance upon Tessler evidences his conclusion that the way of necessity provided Anderson the rights of an abutting owner.
The Department first argues that because Anderson's property, as described in the complaint, does not abut the old SR 79 right-of-way, and its sole access to the highway lies over the lands of others in one form or another, Anderson has no right of access to enforce under Tessler. In response, Anderson relies upon Glessner v. Duval County, 203 So.2d 330 (Fla. 1st DCA 1967). In Glessner, this court held that an easement is property within the meaning of the constitutional provision that private property may not be taken without just compensation. See id. at 332. Anderson urges us to find that the way of necessity, as determined by the trial court, gives Anderson the rights of an abutting owner.
This proposition presents difficulties in the context of the present case. Our review of the record reveals that Anderson's pleadings never made a claim for establishment of a statutory way of necessity across the lands of Mrs. Brown. During its case in chief, Anderson presented an expert witness, Mr. Coloney, who testified that Anderson's property actually abutted the old SR 79 right-of-way. When the Department came back with clear evidence that Mrs. Brown owned the property between Anderson and the right-of-way, Anderson called Mr. Coloney to recant his prior testimony. Only at this point, during the rebuttal case, and without any amendment of the pleadings, did Anderson announce that it sought to proceed based upon some sort of easement theory. The trial court concluded that Anderson did indeed have a statutory way of necessity across Mrs. Brown's property.
At oral argument in this case, counsel for Anderson conceded that this way of necessity would not be enforceable against Mrs. Brown because she was never a party to this action. The owner of a servient tract is a necessary party to a case in which the rights of another land owner to utilize the servient tract are adjudicated. See Price v. Stratton, 45 Fla. 535, 33 So. 644, 648 (1903) ("A decree enjoining [a] lessee from the occupation of the street during the remainder of the [lessee's] term would have operated for such a length of time as to permit the creation of a public easement by prescription, even if none existed before, and in that way might have operated to the prejudice of the owner of the fee, so that he was a necessary party to the suit."); Rawls v. Tallahassee Hotel Co., 43 Fla. 288, 31 So. 237, 239 (1901) (holding that where a decree adjudicated rights affecting a person in the enjoyment of her property, that person was a necessary indispensable party). Because Anderson has established no right as against Mrs. Brown, it would be problematic for this court to base its determination as to whether Anderson is an abutting owner on our characterization of the purported way of necessity. We decline, therefore, to decide the case on the first ground asserted by the Department, noting expressly that the Department has not challenged, by a separate point on appeal, the trial court's characterization of Anderson's right of access across Mrs. Brown's property. For purposes of this decision then, we assume, without deciding, that a right of access existed in favor of Anderson.
In its second point, the Department argues that although the project resulted in a redirection of traffic or a modification of traffic flow, it did not reach the level of a compensable taking of access under Tessler. Analysis of this point requires consideration of the precise factual context out of which Anderson's claim arises.
*1100 Before the construction project, Anderson's customers could turn directly off SR 79 and, by way of one of the existing drives, approach Anderson's place of business in a more or less direct manner. As a result of the construction, SR 79 was elevated at a point west of Anderson's property. Now, someone leaving the property may still turn right or left on old SR 79, which lies just to the east of the new elevated bridge. Anderson argues that, despite continued access to the old roadway, a significant problem exists. Presently, someone making a right turn, which formerly would have taken the traveler north on SR 79, enters onto a portion of SR 79 that simply dead-ends as a fishing pier extending onto West Bay. As a result of the new dead end, no one may now approach the business from the north on old SR 79.
Someone leaving the Anderson property may turn left on old SR 79, and take a route over Laird Park Road and School Drive, the latter of which rejoins the new SR 79 after approximately .42 miles. Travelers approaching on SR 79 may either take the School Drive/Laird Park Road approach or make a turn to the west, away from Anderson's property, entering a road known as Memorial Circle. Memorial Circle leads first to the west and then back to the east, under the new SR 79 bridge, joining old SR 79. Witnesses measured the Memorial Circle route at .75 miles. Both routes ultimately connect to old SR 79 at a point near the subject property. The evidence shows without dispute that ingress and egress to the property is now more inconvenient than before the construction.
Anderson relies primarily upon Tessler to argue that its right of access has been substantially diminished by the realignment of SR 79 and construction of the new bridge. In Tessler, the supreme court stated:
There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished.
538 So.2d at 849. The land owner in Tessler lost all access to the abutting roadway, Palmetto Park Road. See id. at 850. This loss occurred because the county constructed a retaining wall directly in front of Tessler's property, blocking "all access to and visibility of the respondents' place of business from Palmetto Park Road." Id. at 847. Tessler, and her customers, would then be able to reach the property from Palmetto Park Road "by an indirect winding route of some 600 yards through a primarily residential neighborhood." Id. The trial court determined that the construction of the retaining wall amounted to a taking for purposes of inverse condemnation. Id. at 850. The supreme court phrased the issue before it as follows: "Where there has been no taking of the land itself, when is a property owner entitled to be compensated for loss of access to the property caused by governmental intervention?" Id. at 847. On these facts, the court determined that the property owners lost more than their most convenient means of access; instead, the evidence supported a conclusion that there was a substantial loss of access. See id. at 850. Accordingly, the landowners were entitled to inverse condemnation for their loss of access to Palmetto Park Road. See id.
The supreme court clarified its Tessler analysis in Department of Transportation v. Gefen, 636 So.2d 1345 (Fla.1994). Gefen sought recovery for loss of access to Interstate 95 in Duval County. See id. at 1346. The evidence disclosed that Gefen's commercial *1101 real estate abutted McCoy Creek Blvd. See id. The Department, however, closed the Interstate 95 entrance to exit ramps at McCoy Creek Blvd., and thus, according to Gefen, destroyed her property's access to the interstate. See id. She presented evidence at trial that the closure of the interstate ramps destroyed her property as a profitable business site. See id. The trial judge held that the closure of the ramps amounted to a taking without compensation. See id. This court affirmed on the authority of Tessler. See Department of Transp. v. Gefen, 620 So.2d 1087, 1088 (Fla. 1st DCA 1993).
On review, the supreme court reiterated the Tessler rule:
When access from abutting roads is denied to the point that it can be deemed "substantially diminished," property rights which appertain to ownership of the land are disturbed.
Gefen, 636 So.2d at 1346. The court then, however, characterized the Gefen facts as "significantly different from those in Tessler." Id. Gefen lost none of her access to the roads abutting her property. See id. Instead, she objected to the loss of I-95 ingress and egress from a road that abutted her property. See id. Finding that this court had misconstrued Tessler, the supreme court ordered that a judgment be entered in favor of the Department, setting out its analysis as follows:
Here, the question is simply whether landowners who enjoy convenient access to and from limited access state highways such as I-95 have a compensable vested right to that access. This Court has ruled that they do not. No person has a vested right in the maintenance of a public highway in any particular place because the state owes no person a duty to send traffic past his door. Jahoda v. State Road Dep't, 106 So.2d 870, 872 (Fla. 2d DCA 1958), disapproved on other grounds, State Department of Transp. v. Stubbs, 285 So.2d 1 (Fla. 1973). Access, as a property interest, does not include a right to traffic flow even though commercial property might very well suffer adverse economic effects as a result of reduced traffic. Stubbs, 285 So.2d at 4. The commercial impact of traffic changes was more recently addressed in Division of Administration, Department of Transportation v. Capital Plaza, Inc., 397 So.2d 682 (Fla.1981), in which a median, installed as part of a road widening project, channelled traffic away from and limited turns into a service station. The court ruled that there was no deprivation of access but rather a redirection of traffic, for which no recovery was available. Id. at 683.
Gefen, 636 So.2d at 1346.
We must determine whether Anderson's access from abutting roads has been denied to the point that it can be deemed substantially diminished under Tessler or, as was the case in Gefen, whether Anderson has merely lost convenient access to and from SR 79. The case law post-Gefen sheds light on this question. For instance, the supreme court, very shortly after the Gefen decision, noted that Tessler allowed recovery on "narrow facts." Rubano v. Department of Transp., 656 So.2d 1264, 1267 (Fla.1995). Accordingly, where owners abutting SR 84 in Broward County sought compensation after the Department, in order to accommodate construction, temporarily severed connections between SR 84 and Interstate 95, Gefen, and not Tessler, controlled. See id. at 1268.
In State of Florida, Department of Transportation v. Kreider, the court found that new construction substantially diminished the landowner's right of access, and thus a Tessler taking occurred. 658 So.2d 548 (Fla. 4th DCA 1995). Kreider, like Tessler, lost all direct access to an abutting state highway by virtue of construction of a concrete retaining wall between the state highway and the Kreider's property. See id. at 549. Although it found a Tessler taking, the Fourth District noted, "[B]road application of Tessler would make *1102 it expensive and difficult to plan and budget for new roads, since property far from the actual construction might ultimately be entitled to compensation." Id. Kreider followed the Tessler rule, however, noting that in Gefen, the significant factor "was the absence of any change in access to roads directly abutting the property." Id. at 550. The Fourth District further observed, "[T]he trigger for beginning a Tessler analysis has been the destruction of direct access to property from an abutting road." Id. at 549. This court has repeated the trigger analysis set forth in Kreider. See Grandpa's Park, Inc. v. State, Dep't. of Transp., 726 So.2d 789, 791 (Fla. 1st DCA 1998).
In our view, the present case is controlled by Gefen and not by Tessler. Anderson has lost none of its purported abutter's access to preexisting SR 79. Of particular note, no actions of appellant in constructing the bridge and partially realigning SR 79 have destroyed, or even diminished, Anderson's access. Instead, one must now travel a less convenient route from the newly constructed SR 79 to Anderson's property. Stated another way, the major flow of traffic on SR 79 no longer passes Anderson's door. Nevertheless, Anderson's remaining access to the roadway abutting its property is more like that in Gefen than in Tessler. The redirection of traffic here does not amount to a deprivation of access. No constitutional taking has occurred, and compensation is, therefore, not available. See Gefen, 636 So.2d at 1346.
REVERSED.
WEBSTER and VAN NORTWICK, JJ., CONCUR.