958 So.2d 586 (2007)
DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Gregg FISHER and Carol J. Fisher, Appellees.
No. 2D05-5643.
District Court of Appeal of Florida, Second District.
June 27, 2007.
*588 Pamela S. Leslie, General Counsel, and Gregory G. Costas, Assistant General Counsel, Tallahassee, for Appellant.
Raymond T. Elligett, Jr., of Schropp, Buell & Elligett, P.A., Tampa; and Marc I. Sachs and D. Tobyn DeYoung of Sachs & DeYoung, P.A., Tampa, for Appellees.
Opinion dissenting on denial of rehearing.
BY ORDER OF THE COURT:
The Appellees' motion for rehearing is denied. A single member of the panel dissents, with opinion, from the denial of the motion for rehearing. Accordingly, the opinion dated July 14, 2006, is withdrawn and the attached opinion that includes the dissenting opinion to the denial of the motion for rehearing is substituted for that opinion. No further motions for rehearing will be entertained in this appeal. The Appellees' motion for rehearing en banc and motion for certification are denied.
STRINGER, Judge.
The Department of Transportation appeals from a final summary judgment entered against it and in favor of the Fishers in this inverse condemnation case concerning property along U.S. 19 in Clearwater. Because the trial court erred in finding that the Fishers' access to their property has been "substantially diminished," we reverse and remand for entry of judgment in favor of the Department.
The facts in this case are essentially undisputed. The Department is currently engaged in ongoing reconstruction of U.S. 19 through Pinellas County. As part of that construction, portions of U.S. 19 are being elevated. Along these elevated portions, the Department is constructing frontage roads to provide access to businesses and residences. Thus, many businesses which used to abut the main travel lanes of U.S. 19 now abut frontage roads. The Fishers own one such business, the Coachman Car Wash. Before construction began, drivers could access the Fishers' car wash directly from U.S. 19. Postconstruction, drivers must use the frontage road to access the car wash from U.S. 19.
*589 During the course of the construction, the Fishers brought an inverse condemnation action against the Department, contending that they were entitled to compensation because the Department had "taken" the access to their property. The Fishers admitted that none of their property had been physically taken by the Department. Instead, the question was whether the placement of the property on a frontage road resulted in a taking of the Fishers' access to their property. On cross-motions for summary judgment, the trial court found that a taking had occurred, and the Department appealed.
Because none of the Fishers' property was physically taken, the only issue in this case is whether the Department's activities on its own property have resulted in a compensable taking of the Fishers' access to their property. In determining whether access has been "taken," courts must consider the following principles:
There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist. A taking has not occurred when governmental action causes the flow of traffic on an abutting road to be diminished. The extent of access which remains after a taking is properly considered in determining the amount of the compensation.
Palm Beach County v. Tessler, 538 So.2d 846, 849 (Fla.1989) (emphasis added). Because a property owner has no right to a specific level of traffic flow, see State, Dep't of Transp. v. Stubbs, 285 So.2d 1, 4 (Fla. 1973), the question of whether access has been diminished or destroyed must focus on physical access to the property itself  not the amount of traffic that can or will pass by the property postconstruction.
Considering these general principles, it is clear that when governmental action actually destroys all physical access to the property from a particular road, the loss of access is compensable. See, e.g., Tessler, 538 So.2d at 850 (affirming award of compensation because the property owner's access to Palmetto Park Road was completely destroyed by the construction of a retaining wall between the road and their property). It is also clear that when the government physically appropriates some portion of a property owner's land, any diminished access to the property may be considered as part of the severance damages owed for the reduced value of the remainder of the land. Id. at 849. However, in the absence of a physical taking of land, mere circuity of access is not compensable unless the remaining access to the property is "substantially diminished." Id.; see also Rubano v. Dep't of Transp., 656 So.2d 1264, 1269 n. 3 (Fla.1995) ("roadway abandonment, construction, or realignment which results in inconvenience or mere circuity of access to abutting landowners does not give rise to a compensable injury"); State, Dep't of Transp. v. Weggies Banana Boat, 576 So.2d 722, 724 (Fla. 2d DCA 1990) ("any decrease in visibility or increased circuity of access Weggies suffered as a result of the overall design of the project is not compensable"); State, Dep't of Transp. v. S.W. Anderson, Inc., *590 744 So.2d 1098, 1102 (Fla. 1st DCA 1999) (reversing award of compensation because, at most, "one must now travel a less convenient route from the newly constructed SR 79 to Anderson's property").
In an inverse condemnation action such as this one, the trial court makes both findings of fact and conclusions of law. "As a fact finder, the judge resolves all conflicts in the evidence. Based upon the facts as so determined, the judge then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity." Tessler, 538 So.2d at 850; see also USA Independence Mobilehome Sales, Inc. v. City of Lake City, 908 So.2d 1151, 1154 (Fla. 1st DCA 2005). Thus, the trial court's factual findings are afforded deference, but its application of the facts to the law, i.e., its determination that a given set of facts constitute a substantial diminution of access, is reviewed de novo. USA Independence Mobilehome Sales, 908 So.2d at 1154.
In this case, the facts show that the Fishers' car wash previously abutted U.S. 19 north of its intersection with N.E. Coachman Road. Before construction began, the Fishers had a driveway that led directly from U.S. 19 to their car wash. Drivers heading north on U.S. 19 could turn right into the driveway. Drivers heading south on U.S. 19 could turn left into the driveway through a median cut. The Fishers also had both eastbound and westbound access to their car wash from N.E. Coachman.
After the U.S. 19 construction was completed, access to and from the Fishers' car wash from N.E. Coachman remained the same. However, where the Fishers previously had a driveway opening onto U.S. 19, the Fishers now have a driveway that leads to a one-way northbound frontage road. Drivers heading north on U.S. 19 now exit before N.E. Coachman, follow the frontage road, and turn right into the car wash. Other than requiring drivers to exit the main lanes of U.S. 19, this new traffic pattern does not make drivers travel a new or longer path. Rather, northbound drivers travel the same distance on the new frontage road that they used to travel on U.S. 19 and make the same right-hand turn into the driveway. To leave the car wash and head north, drivers make a right-hand turn back onto the frontage road and follow it to the on-ramp just north of Sunset Point Road. Again, the new traffic pattern does not make northbound drivers travel any new or longer path, and they travel the same distance on the frontage road that they previously traveled on U.S. 19.
Drivers traveling south on U.S. 19 do have a somewhat more circuitous path. They must now exit U.S. 19 north of the car wash at Sunset Point Road, travel south on the frontage road to N.E. Coachman, where they can make a protected U-turn and travel back north to the car wash. According to the Fishers, this new route is .61 miles in length. To return to traveling south, drivers must travel north on the frontage road to Sunset Point Road, where they make a protected U-turn and merge back up onto U.S. 19. According to the Fishers, this new route is .96 miles in length.
In light of these undisputed facts, we find that physical access to the Fishers' property has not been "substantially diminished" by the reconstruction of U.S. 19. Access to east and westbound N.E. Coachman is completely unaffected. Access to northbound U.S. 19 is affected only in that drivers must use a frontage road for a portion of their travel. Only access to southbound U.S. 19 is affected to any appreciable degree. However, the change in access from southbound U.S. 19 is insufficient *591 to support a finding that the Fishers' right of access to their property has been "substantially diminished." Rather, at best, the Fishers have lost their most convenient means of access. Because other suitable access continues to exist, the Fishers' loss of their most convenient means of access is not compensable under the clear holding of Tessler.
The Fishers raise three arguments in support of the trial court's finding that their access was "substantially diminished." First, the Fishers rely on what they claim are comparable U.S. 19 cases in which this court has allegedly affirmed awards of damages for loss of access. However, a review of these cases shows that they are not similar to the Fishers' case. Both State, Department of Transportation v. ABS, Inc., 336 So.2d 1278 (Fla. 2d DCA 1976), and Weggies Banana Boat, 576 So.2d at 722, involved physical appropriations of property and claims for loss of access as an element of severance damages. The Fishers are not entitled to severance damages in this case because none of their property was taken by the Department.
The Fishers also direct this court to K-Mart Corp. v. State, Department of Transportation, 636 So.2d 131 (Fla. 2d DCA 1994); however, the issue in that case was whether K-Mart had standing as a lessee to be a party to a condemnation action, not whether any type of damages were proper. Moreover, the facts showed that the Department took a portion of K-Mart's leased property for construction of a U.S. 19 overpass, which resulted in the loss of K-Mart's driveways, parking, and access to U.S. 19. Thus, unlike the Fishers, K-Mart had a claim for severance damages.
The Fishers also cite to State, Department of Transportation v. Kucik, 686 So.2d 11 (Fla. 2d DCA 1996), and Department of Transportation v. Crawford, 907 So.2d 525 (Fla. 2d DCA 2005) (table), as cases that support their position. However, Crawford was a per curiam affirmance without opinion, and thus it does not constitute authority for any proposition. Dep't of Legal Affairs v. Dist. Court of Appeal, 5th Dist., 434 So.2d 310, 311 (Fla. 1983) (holding that per curiam affirmance without a written opinion has no precedential value). Further, our review of the briefs in that case shows that the Department took a portion of Crawford's property, thus entitling Crawford to severance damages for any loss in value resulting from the Department's taking of a portion of the property. As for Kucik, it is a citation opinion to State, Department of Transportation v. Kreider, 658 So.2d 548 (Fla. 4th DCA 1995). There is no discussion of any facts, and it is impossible to determine whether any award was actually made for loss of access and, if so, on what basis. Accordingly, contrary to the Fishers' assertions, none of these cases involve "comparable" claims solely for loss of access.
Second, the Fishers rely on Tessler and Kreider for the proposition that construction which results in a more circuitous route to the property is compensable, and they contend that their situation is even more dire than that in either Tessler or Kreider. We disagree. In Tessler, the property owner's access to Palmetto Park Road was completely destroyed. 538 So.2d at 850. No frontage road was built, and where the owner previously had access to both Palmetto Park Road and Spanish Trail, she now had access only to Spanish Trail. Tessler would be binding authority in this case only if the Department had completely severed all of the Fishers' access to U.S. 19 and had failed to provide a frontage road, thus leaving the Fishers with access only from N.E. Coachman. *592 Because the Department did not do so, Tessler is not controlling.
Kreider is a closer case, but distinguishable nevertheless. Kreider owned property along State Road 84. 658 So.2d at 549. Prior to construction, eastbound traffic could make a right turn directly into Kreider's property. Westbound traffic had to pass Kreider's property and make a U-turn a short distance away. Postconstruction, westbound traffic had to exit onto the service road, make a U-turn under State Road 84, and then travel back east to Kreider's property. Eastbound traffic had to pass Kreider's property, make a U-turn from the left lane onto westbound State Road 84, go back past Kreider's property and exit onto a service road, make another U-turn on the service road back to eastbound State Road 84, and then travel back to Kreider's property. Id. at 549 n. 1. The court found on those facts that Kreider's access to his property had been substantially diminished.
Here, the Fishers' access from reconstructed southbound U.S. 19 is comparable to Kreider's westbound postconstruction access from State Road 84. However, unlike the eastbound traffic in Kreider, which was significantly diverted from its former path by the reconstruction, northbound traffic in this case is essentially unaffected by the changes in U.S. 19. While drivers must exit U.S. 19 onto the frontage road, they need not travel any long and circuitous path. Rather, they simply continue to travel north on the frontage road, rather than north on U.S. 19, until they reach the car wash. Further, there is no indication in Kreider that Kreider had any other access to his property, whereas here the Fishers have completely unaffected access from N.E. Coachman. Thus, the undisputed facts presented by the Fishers do not establish that their situation is like Kreider's, and the difference in the facts warrants the different result.
We agree with the Department that the facts of this case are actually most like those in State, Department of Transportation v. S.W. Anderson, Inc., 744 So.2d 1098 (Fla. 1st DCA 1999). S.W. Anderson originally had direct access to its property by way of an easement to State Road 79. Drivers traveling in either direction could turn directly off of State Road 79 into one of Anderson's driveways. Id. at 1100. The Department then elevated and realigned State Road 79 and made old State Road 79 a service road that dead-ended at a fishing pier. As a result, drivers were forced to access Anderson's property from State Road 79 by way of either of two routes, one of which required a new route of .42 miles and the other of which required a new route of .75 miles. Id. at 1100. In rejecting Anderson's claim for damages for loss of access, the court stated:
Anderson has lost none of its purported abutter's access to preexisting SR 79. Of particular note, no actions of appellant in constructing the bridge and partially realigning SR 79 have destroyed, or even diminished, Anderson's access. Instead, one must now travel a less convenient route from the newly constructed SR 79 to Anderson's property.
Id. at 1102.
Here, like in Anderson, the Fishers have not shown that the Department's actions destroyed or diminished access to their property. Rather, they have shown only that drivers must now travel a less convenient route from the newly constructed U.S. 19 to their property. Thus, like in Anderson, the Fishers have failed to show that they have suffered a compensable loss of access.
Third, the Fishers contend that their placement on a frontage road constitutes a *593 taking of access as a matter of law. This argument arises from a misreading of two supreme court cases. In Anhoco Corp. v. Dade County, 144 So.2d 793, 798 (Fla. 1962), the evidence showed that the Department had constructed ditches that completely severed access to Anhoco's property from the abutting road. The court found that completion of a frontage road restored access to the abutting road. Id. The court then held that Anhoco was entitled to damages for the period of time that access had been denied, which was measured from when the ditches were constructed until the frontage road was completed. Thus, while the Fishers correctly point out that Anhoco was awarded damages for lack of access, this award was not due to Anhoco's placement on a frontage road. Rather, it was due to the lack of access caused when the Department completely severed all access to the property before the frontage road was built.
Similarly, in Rubano v. Department of Transportation, 656 So.2d 1264, 1265 (Fla. 1995), the issue was whether there had been a compensable taking of access during reconstruction, which involved the temporary construction of a service road. The court held that placing Rubano's property on a service road did not constitute a compensable taking. Id. The court held that Rubano was never denied access to State Road 84 and did not lose anything other than his most convenient means of access because "DOT purposefully constructed the temporary service road to provide the properties with continuing access to SR 84." Id. at 1269. Thus, neither Anhoco nor Rubano hold that merely placing a property on a frontage road results in access being "substantially diminished" as a matter of law.
In this case, our de novo review of the question of whether the Fishers' right of access to their property was "substantially diminished" by the reconstruction of U.S. 19 shows that it was not. While southbound traffic on U.S. 19 may face a slightly longer route to reach the property, traffic from all other directions is virtually unaffected. Because the physical access to the Fishers' property has not been "substantially diminished," the Fishers have not suffered a compensable taking. While we are not unsympathetic to the Fishers' plight, we must reverse and remand for entry of judgment in favor of the Department.
Reversed and remanded for further proceedings.
SALCINES, J., and ISOM, CLAUDIA R., Associate Judge, Concur.

ON REHEARING
STRINGER and SALCINES, JJ., deny appellees' motion for rehearing.
ISOM, CLAUDIA R., Associate Judge, Dissenting.
I respectfully dissent from the denial of the Fishers' motion for rehearing. I would grant rehearing and affirm the trial court's grant of summary judgment. Based on the undisputed facts,[1] this case *594 involves the destruction of the Fishers' sole direct access to U.S. 19 due to the reconstruction of U.S. 19 into a high-speed, elevated, limited-access facility served by Texas U-turns and one-way frontage roads. The trial court's decision that their property abutted U.S. 19 was not appealed by DOT. Therefore, this case is controlled by Palm Beach County v. Tessler, 538 So.2d 846 (Fla.1989); Anhoco Corp. v. Dade County, 144 So.2d 793, 797 (Fla. 1962); State Road Department of Florida v. McCaffrey, 229 So.2d 668 (Fla. 2d DCA 1969); cf. Pinellas County v. Austin, 323 So.2d 6 (Fla. 2d DCA 1975); Department of Transportation v. ABS, Inc., 336 So.2d 1278 (Fla. 2d DCA 1976); and Department of Transportation v. Kreider, 658 So.2d 548 (Fla. 4th DCA 1995). Accordingly, I would grant rehearing and affirm the summary judgment.
NOTES
[1] The record contains evidence that, following reconstruction, the controlled access designation of U.S. 19 will be more restrictive than that of the S.R. 84 project that was the subject of the Kreider decision. The Fishers' U.S. 19 driveway was the primary point of entry for individuals accessing the property. Ninety percent of the traffic used the U.S. 19 entrance rather than the secondary driveway which was accessed through use of a private road easement connecting to Coachman Road near its intersection with U.S. 19. After reconstruction, the Fishers' direct access will be destroyed and their property will be located adjacent to a one-way service road and behind a twenty-foot high wall. That wall will separate their property from U.S. 19. Their present direct access to U.S. 19 will be replaced by a circuitous system of one-way service roads. The Fishers' property will not be visible to northbound motorists at the exit closest to their property. If a northbound motorist were to miss that exit, she/he must continue north to Sunset Point Road to exit, then exit onto the northbound frontage road, travel north, make a U-turn under the Sunset Point Road overpass, drive south to the N.E. Coachman Road underpass, make another U-turn and travel back north on the newly constructed northbound frontage road with a net additional distance of 5,400 feet. The increase in distance for northbound ingress post construction will be from 0.41-1.03 miles and for southbound ingress will be 0.61 miles.