NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| DEPARTMENT OF TRANSPORTATION, | ) ) ) |
| Appellant, | ) ) |
| v. | ) ) |
| BUTLER CARPET COMPANY, a Florida Corporation, d/b/a BOB'S CARPET MART, | ) ) ) ) |
| Appellee. | ) ) |
| DEPARTMENT OF TRANSPORTATION, | ) ) ) |
| Appellant, | ) ) |
| v. | ) ) |
| CHK, LLC, a California Limited Liability Company, | ) ) ) |
| Appellee. | ) |

Case No. 2D15-2030

Case No. 2D15-3075

**CONSOLIDATED**

Opinion filed May 31, 2017.

Appeals from the Circuit Court for Pinellas County; Pamela A.M. Campbell and Walter L. Schafer, Jr., Judges.

Clinton L. Doud, Special Counsel and Marc Peoples, Assistant General Counsel, Department of Transportation, Tallahassee, for Appellant.

Raymond T. Elligett, Jr., and Shirley T. Faircloth of Buell & Elligett, P.A., Tampa; James A. Helinger, Jr., of Law Offices of James A. Helinger, Jr.; and D. Tobyn DeYoung of D. Tobyn DeYoung, P.A., St. Petersburg, for Appellees.

SLEET, Judge.

The Department of Transportation appeals the stipulated final judgments awarding damages to Butler Carpet Company and CHK, LLC, in individual inverse condemnation actions brought by Butler and CHK concerning properties along U.S. 19 in Pinellas County.[1]  We affirm the trial courts' awards to Butler and CHK of damages for the actual physical takings of portions of their properties.  However, because the trial courts in these individual cases both erred in finding that the Department's partial physical takings of the properties directly caused severance damages for loss of access and visibility and that access to each property was substantially diminished as a result of the U.S. 19 construction project, we reverse those portions of the final judgments that award severance damages and damages for substantially diminished access and loss of visibility.

The facts in these cases are undisputed.  Both properties are similarly situated on either side of U.S. 19 in Pinellas County—Butler on the eastern side and CHK on the western side.  Butler owns and operates a business called Bob's Carpet Mart on its property, and CHK owns property upon which there is a furniture store.  Prior to the Department's U.S. 19 reconstruction project, Butler's property directly abutted the road's northbound lanes and CHK's property directly abutted the southbound lanes.  At

---

[1]We have consolidated these appeals for the purposes of opinion only.

- 2 -

that time, motorists could directly access these commercial properties via driveways that connected to U.S. 19, as well as by other local roads running along the sides and backs of the properties. Old U.S. 19 was rebuilt as an elevated highway with twenty-five-foot-high walls. On either side of U.S. 19, the Department constructed frontage roads that directly abut Butler's and CHK's properties. As such, there is no longer direct access from U.S. 19 to Butler's and CHK's properties, and instead access is via the frontage roads and the existing side and rear local roads. The frontage roads can be accessed from U.S. 19 at major intersections via exit ramps and U-turns beneath overpasses. The exits include signage displaying businesses' names and addresses to alert motorists of which exit to use to access properties along the frontage roads.

New U.S. 19 and the frontage roads were constructed on the Department's own right of way. But the Department encroached upon small portions of Butler's and CHK's properties to construct driveways and sidewalks connecting the properties to the frontage roads, and an additional portion of Butler's parking lot was used to build a drainage area. The Department did so without permission from the property owners and without instituting eminent domain proceedings. As a result, both Butler and CHK filed actions for inverse condemnation against the Department.

The Department stipulated pretrial that it did not have the legal right to physically invade Butler's and CHK's properties and that the reconstruction of U.S. 19 damaged both properties. As such, the only issue at each trial was whether the damage caused by the Department was compensable.

After conducting nonjury trials on the issue of liability, both trial courts entered orders finding compensable takings for the physical encroachment and construction upon the properties and ruling that both Butler and CHK were also entitled

- 3 -

to severance damages for loss of access and visibility and damages for substantially diminished access. The parties then entered into mediated settlement agreements setting forth the amounts of damages, as well as attorney fees and costs.

On appeal, the Department does not challenge either trial court's finding that physical takings occurred in these cases. Rather the Department argues that the trial courts erred in finding compensable severance damages for loss of access and visibility due to the Department's partial physical takings. The Department maintains that the loss of access and visibility did not result directly from the physical takings but rather from the overall impact of the construction of new U.S. 19 and the frontage roads on the Department's own property. The Department also argues that the trial courts further erred in determining that Butler and CHK were entitled to compensable damages because the project substantially diminished access to their properties. We agree with both of the Department's arguments.

The general policy of takings law "is that owners of property taken by a governmental entity must receive full and fair compensation." Fla. Dep't of Transp. v. Armadillo Partners, Inc., 849 So. 2d 279, 282 (Fla. 2003) (quoting Broward County v. Patel, 641 So. 2d 40, 42 (Fla. 1994)). "When less than the entire property is being appropriated, 'full compensation for the taking of private property . . . includes both the value of the portion being appropriated and any damage to the remainder caused by the taking.' " Id. at 282-83 (quoting Div. of Admin. v. Fenchman, Inc., 476 So. 2d 224, 226 (Fla. 4th DCA 1985)). "The damage to the remainder caused by the taking is also referred to as severance damages, damage caused by severing a part from the whole." Id.

# I. SEVERANCE DAMAGES

In an inverse condemnation proceeding grounded upon an alleged loss of access, the trial court makes both findings of fact and conclusions of law. Palm Beach County v. Tessler, 538 So. 2d 846, 850 (Fla. 1989). The trial court, as finder of fact, resolves all conflicts in the evidence and "[b]ased upon the facts as so determined . . . then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity." Id. On appeal, "the trial court's factual findings are afforded deference, but its application of the facts to the law . . . is reviewed de novo." Dep't of Transp. v. Fisher, 958 So. 2d 586, 590 (Fla. 2d DCA 2007).

The general rule in takings law is that "[w]hen less than the entire property is taken, compensation for damage to the remainder can be awarded only if such damage is caused by the taking." Div. of Admin., State Dep't of Transp. v. Capital Plaza, 397 So. 2d 682, 683 (Fla. 1981) (emphasis added) (determining that the landowner was not entitled to severance damages for loss of access caused by a new median that was constructed on the Department's own right of way and not by the widening of a road that was performed on a portion of property taken from the landowner); see also City of Jacksonville v. Twin Rests., Inc., 953 So. 2d 720, 723-24 (Fla. 1st DCA 2007) (reversing award of severance damages for changes in traffic flow caused by construction of new median on the city's own right of way because award was inconsistent with supreme court's holding in Capital Plaza "that landowners have no compensable interest in traffic flow and that, in order to receive severance damages, any complained-of impairment must result directly from a taking" (quoting Capital Plaza, 397 So. 2d at 683)).

Nevertheless, Butler and CHK maintain that they are entitled to severance damages here pursuant to this court's opinion in Fisher, 958 So. 2d 586. In Fisher, where there was no physical taking by the Department, a landowner whose property abutted U.S. 19 before the roadway's reconstruction brought an inverse condemnation action for loss of access because he was left with only direct access to a frontage road. This court ultimately reversed the summary judgment based on our conclusion that the landowner's access had not been substantially diminished. But in doing so, this court stated that "when the government physically appropriates some portion of a property owner's land, any diminished access to the property may be considered as part of the severance damages owed for the reduced value of the remainder of the land." Id. at 589 (citing Tessler, 538 So. 2d at 849). Both trial courts in the instant cases relied upon this statement to conclude that the Department's physical takings here automatically entitled Butler and CHK to severance damages for loss of access. Such, however, is a misreading of Fisher.

This statement in Fisher does not create an automatic entitlement to severance damages for loss of access whenever there has been a partial taking. This court merely stated that diminished access "may be considered" when determining severance damages. 958 So. 2d at 589. There was no reason for this court to elaborate on this legal concept in Fisher because there was no partial taking in that case and severance damages therefore were not at issue. But this court did recognize in Fisher that in order to establish compensable damages for lack of access, a landowner must show a connection between the government action and the loss of access. Id. at 592 ("[T]he Fishers have not shown that the Department's actions destroyed or diminished access to their property. Rather, they have shown only that

- 6 -

drivers must now travel a less convenient route from the newly constructed U.S. 19 to their property. Thus . . . the Fishers have failed to show that they have suffered a compensable loss of access.").

Accordingly, where there has been a partial taking of property and the landowner brings a claim for loss of access, the trial court must first determine whether the claimed loss of access is a direct result of the use or activity on the land taken or whether it is solely the result of activity that occurred on property other than that taken from the property owner. If the claimed loss of access is not caused by the use to which the property taken has been applied, the property owner is not entitled to severance damages for loss of access. Capital Plaza, 397 So. 2d at 683. But if the evidence demonstrates a direct connection between the activity on the taken property and the claimed loss of access, the property owner is entitled to severance damages for the loss of access he or she can prove. Fisher, 958 So. 2d at 589.

Applying this standard to the instant cases, we conclude that Butler and CHK are not entitled to severance damages for loss of access. The Department's takings of these properties were for the specific purpose of reconstructing Butler's and CHK's driveways to connect the properties to the public frontage road and, in Butler's case, to construct a drainage area. But Butler's and CHK's claims for loss of access did not relate to this construction and instead were grounded upon the reconfiguration of U.S. 19 and construction of a frontage road system, which—like the median in Capital Plaza—occurred on the Department's own existing right of way, not on the land taken from the property owners.

We do recognize that in Lee County v. Exchange National Bank of Tampa, 417 So. 2d 268 (Fla. 2d DCA 1982), this court carved out a very narrow exception to

Capital Plaza's general rule. The Lee County exception "authorizes an award for damages to the remainder where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put." Id. at 270. However, a taking does not fall within this exception, and severance damages are not proper, if it is "practicable to separate the use of the land taken from that of the adjoining land." Id. at 271 (quoting Pub. Serv. Elec. & Gas Co. v. Oldwick Farms, Inc., 308 A.2d 362, 365 (N.J. Super. Ct. App. Div. 1973)). Such is the case here. There is a clear distinction between the project constructed on the Department's right of way and the work executed on Butler's and CHK's properties. The U.S. 19 project involved major construction of a new elevated highway and the frontage road system for the purpose of improving the flow of traffic on U.S. 19. In contrast, construction upon the taken portions of Butler's and CHK's properties was designed to enhance and improve driver access between the properties and the frontage roads. Butler's and CHK's claims of loss of access stem from the Department's use of its own right of way independent of the small portions of land taken from the property owners. This is not the factual scenario envisioned by the Lee County court. See id. at 269-70 (noting that a good example of the general rule's exception would be highway construction cases "grounded on the premise that it is impossible to separate the damages caused by the small portion of the highway built upon the taken land from the damages caused by the highway as a whole" (emphasis added)).

At trial, Butler and CHK each presented the expert witness testimony of an engineer,[2] who stated that the use to which their land was put was an "integral and

_____

[2]CHK and Butler both engaged the same engineer to testify as an expert witness at their respective trials.

- 8 -

inseparable part of the entire project" because the reconstruction of U.S. 19 made it necessary for the Department to connect the properties to frontage roads, improve the sidewalks, and in Butler's case, provide a drainage area. He also testified that the sidewalks had to be improved to comply with the federal Americans with Disabilities Act in order for the Department to receive federal funds to complete the entire project. But there was no testimony or evidence that the work on the land taken by the Department directly caused a loss of access. See Twin Rests., 953 So. 2d at 722 ("Twin put on no evidence that the actual taking of its property, as opposed to effects it anticipated from median-induced changes in traffic flow, would cause any severance damages."). In fact, both he and the Department's engineer agreed that the work performed on the property taken improved access from both properties to the frontage road. As such, the Lee County exception is inapplicable to the instant cases. See Lee County, 417 So. 2d at 271 ("[W]here it is possible to separate the element of damage to remaining lands due to use of the land taken from the owner, from the damage thereto flowing from the use of lands taken from others for the same project, the measure of damage is limited to that caused by use of the land taken from the owner." (quoting Oldwick Farms, 308 A.2d at 364)).

As such, Butler and CHK are not entitled to severance damages for their claims of loss of access.

## II. SUBSTANTIAL DIMINUTION OF ACCESS

Independent of their claims for severance damages due to loss of access, Butler and CHK could be entitled to compensation if the Department's actions amounted to a taking by substantially diminishing access to their properties. See Tessler, 538 So. 2d at 849 (holding that "[t]here is a right to be compensated through inverse

condemnation when governmental action causes a substantial loss of access to one's property" independent of whether there was a physical taking). "The owner of property abutting a public wa[y] has a right of ingress to and egress from his property." Weir v. Palm Beach County, 85 So. 2d 865, 868-69 (Fla. 1956); see also § 334.03(20), Fla. Stat. (2009) (defining "right of access" as "the right of ingress to a highway from abutting land and egress from a highway to abutting land"). "[W]hen an established land service road is converted into a limited access facility the abutting property owners are entitled to compensation for the destruction of their previously existing right of access." Anhoco Corp. v Dade County, 144 So. 2d 793, 797 (Fla. 1962).[3] However, this right is "subordinate to the underlying right of the public to enjoy the public way to its fullest extent as well as . . . to have the way improved to meet the demands of public convenience and necessity." Weir, 85 So. 2d at 869; see also Bowden v. City of Jacksonville, 42 So. 394 (Fla. 1906). And " 'access' as a property interest does not presently include a right to traffic flow even though commercial property might very well suffer adverse economic effects as a result of a diminution in traffic." State Dep't of Transp. v. Stubbs, 285 So. 2d 1, 4 (Fla. 1973).

In Tessler, 538 So. 2d at 849, the Florida Supreme Court explained:

It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished.

---

[3]"A limited access facility may be described generally as a broad super-highway with traffic lanes separated by a central median strip, and with ingress and egress to and from the highway only at designated interchanges or crossovers, oftentimes substantial distances apart." Anhoco, 144 So. 2d at 797.

- 10 -

The trial courts here relied on Tessler to determine that there had been compensable takings of access in the instant cases. Based on our de novo review, we conclude that this was error. See Fisher, 958 So. 2d at 590.

In Tessler, the court concluded that evidence that the proposed government action in that case, when completed, "would block all access" to the public roadway that the landowner's business fronted and would leave "access thereto only through a circuitous alternative route through residential streets" supported "the conclusion that there was a substantial loss of access." 538 So. 2d at 847, 850. Here, however, the government action did not "block all access" to the public roadway; instead, the Department's reconstruction project included public frontage roads that provided access to U.S. 19 from Butler's and CHK's properties. As such, Tessler is factually distinguishable from the instant case.

So too are Stubbs, 285 So. 2d 1, and Department of Transportation v. Krieder, 658 So. 2d 548 (Fla. 4th DCA 1995), both of which Butler and CHK cite on appeal. In Stubbs, the Department's project included a plan to permanently close the part of the public road abutting the landowner's property without constructing a service road or any other road to replace access to the public road, "seriously disturb[ing], if not destroy[ing]" the property's ingress and egress. 285 So. 2d at 3. The landowner's property would go from being "accessible to automobile traffic moving both north and south" on the public road to being placed in a cul-de-sac. Id. at 2. In Kreider, the abutting landowner's access to the main travel lanes of a state road was replaced with access to a one-way service road that was characterized as a "road to nowhere." 658 So. 2d at 550. Neither factual scenario is similar to the facts of the instant cases.

- 11 -

Furthermore, placement on a frontage road alone does not per se amount to a substantial diminution of access or, therefore, a compensable taking.  See Tessler, 538 So. 2d at 849 ("The loss of the most convenient access is not compensable where other suitable access continues to exist."); see also Rubano v. Dep't of Transp., 656 So. 2d 1264, 1269 (Fla. 1995) ("[W]e noted in Anhoco[, 144 So. 2d 793,] that the completion of the service road, which provided Anhoco with access to the highway, had effectively remedied Anhoco's access problem."); Fisher, 958 So. 2d at 589-90 (concluding that access was not substantially diminished despite the fact that Fisher's property could only be reached via the frontage road); cf. Anhoco, 144 So. 2d at 798 ("It will be recalled that by the time the instant condemnation suit was instituted the State Road Department had constructed a frontage road paralleling the limited access facility and running the length of Anhoco's property.  This road appears to have provided reasonable access to the new highway from both theaters.  If this had been done at the outset much of the instant problem would never have arisen.").  Instead, placement on the frontage road is a factor to be considered in the accessibility analysis.

In the instant cases, the provision of frontage roads preserved Butler's and CHK's individual access to a public road.  And as the supreme court in Tessler recognized, a property owner's right of ingress and egress is to a public road, not to a particular public road.  538 So. 2d at 849 (stating that "the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless" the landowner's overall access is substantially diminished (emphasis added)).  Additionally, access to Butler's and CHK's properties via side and rear roads was unaffected by the U.S. 19 project.

Butler and CHK presented evidence below similar to that presented by the landowner in Fisher of the longer routes northbound and southbound drivers would have to take to access the affected properties via exit ramps, U-turns, and frontage roads. 958 So. 2d at 590. Like we did in Fisher, we conclude that Butler and CHK have merely established that they have lost "their most convenient means of access" to their properties but that such "is not compensable under the clear holding of Tessler." Id. at 590-91. "[M]ere circuity of access is not compensable unless the remaining access to the property is 'substantially diminished.' "[4] Id. at 589.

Additionally, Butler and CHK have not demonstrated that they have suffered special damages not common to the general public. See Rubano, 656 So. 2d at 1270 ("[I]f injury or inconvenience is the same in kind as that suffered by others similarly situated, but different only in degree, compensation is not recoverable." (quoting Anhoco, 144 So. 2d at 798)). Butler and CHK are in no different position than any other landowner abutting a U.S. 19 frontage road. They have not established that they are entitled to compensable damages due to the substantial diminution of access to their properties.

### III. LOSS OF VISIBILITY

With regard to Butler's and CHK's claims of loss of visibility, we start with the general rule that any decrease in visibility suffered as a result of the overall U.S. 19 construction project is not compensable. See Dep't of Transp. v. Weggies Banana

---

[4]The engineer for Butler and CHK based his distance calculations on a starting point that would require every driver traveling to these businesses to opt to use an exit other than the one nearest to each business. We can only assume that the reason for this method of calculation was to enhance the evidence of routes that are circuitous and time consuming, but the length of the new routes supported by this testimony does not change our analysis under Tessler and Fisher.

Boat, 576 So. 2d 722, 724 (Fla. 2d DCA 1990). In Weggies, this court stated that "any decrease in visibility or increased circuity of access Weggies suffered as a result of the overall design of the project is not compensable." Id. For that proposition, this court relied on Division of Administration, State Department of Transportation v. Ness Trailer Park, Inc., 489 So. 2d 1172, 1180 (Fla. 4th DCA 1986), which involved a loss of access claim—not a loss of visibility claim—and which relied on the Capital Plaza general rule to reverse an award of severance damages "when the directly taken property was not used for the purpose of limiting access." As such, this court in Weggies recognized that the general rule of Capital Plaza is not limited to loss of access claims. See Capital Plaza, 397 So. 2d at 683 ("When less than the entire property is taken, compensation for damage to the remainder can be awarded only if such damage is caused by the taking." (emphasis added)). Here, Butler and CHK allege loss of visibility caused by the construction of elevated U.S. 19. Because they have not alleged a damage that is the result of the partial taking, Capital Plaza precludes recovery for their loss of visibility claims.

Furthermore, "the agency controlling the street may in fact interfere with easements of light, air, and view without [it] constituting a taking so long as the interference is reasonable." State, Dep't of Transp. v. Suit City of Aventura, 774 So. 2d 9, 14 (Fla. 3d DCA 2000) (first citing Tessler, 538 So. 2d at 848; and then citing Benerofe v. State Rd. Dep't, 217 So. 2d 838, 839 (Fla. 1969)). In Suit City, the Third District concluded that the "interference" there, "i.e., the elevation of the lanes[, was] not a taking of light, air, or view (or visibility). Reducing the traffic distress at this intersection by elevated lanes is certainly within the discretion of the [Department] and is well within the bounds of reason." Id. Here, the reconstruction of U.S. 19 on the

- 14 -

Department's own right of way for the purpose of increasing traffic flow and reducing traffic distress is also well within the bounds of reason. As such, Butler and CHK are not entitled to severance damages based on their claims of loss of visibility.

## IV. CONCLUSION

We affirm the awards to Butler and CHK of damages for the actual physical takings of portions of their properties. However, we reverse the trial courts' awards of severance damages and damages for substantially diminished access and loss of visibility. Furthermore, even though the parties agreed to specific amounts of attorney fees and costs in their mediated settlement agreements, those agreements also noted that the Department reserved the right to appeal "this matter in its entirety." As such, on remand, the trial courts shall reconsider the issue of attorney fees and costs. Finally, because our disposition will reduce the amounts of the overall awards to Butler and CHK, on remand the trial courts shall also recalculate prejudgment interest.

Affirmed in part, reversed in part, and remanded with instructions.

CASANUEVA and ROTHSTEIN-YOUAKIM, JJ., Concur.